# Richmond.

## Evans v. Atlantic Coast Line Railway Co.

### March 1, 1906.

### Absent, Whittle and Cardwell, JJ.

1. MALICIOUS PROSECUTION—*What Necessary to Sustain—Advice of Counsel—Case at Bar.*—To warrant a verdict for the plaintiff in an action of malicious prosecution, it must be proved that the prosecution alleged in the declaration has terminated favorably to the now plaintiff, though there need not be a final acquittal; that it was instigated or procured by the co-operation of the now defendant; that it was without probable cause, and that it was malicious. The malice may be inferred from the want of probable cause, but want of probable cause can never be inferred from the plainest malice. Advice of counsel is a good defense, provided the now defendant proves that he sought counsel with an honest purpose of being informed as to the law; that he made a full, correct, and honest disclosure to his counsel of all material facts in his knowledge bearing on the guilt of the now plaintiff, and that he was in good faith guided by the advice of counsel in causing the arrest of the plaintiff; and the burden is on the plaintiff to prove this. In the case at bar, the evidence warranted the finding of the jury that there was no probable cause for suing out the warrant in the criminal prosecution in the declaration mentioned, which was sworn out solely upon the information of a detective employed by the now defendant, and that there had not been a full, correct, and honest disclosure made to counsel of the material facts within the knowledge of the detective, or which should have been within his knowledge had he made a reasonably careful investigation bearing on the guilt of the now plaintiff.

Error to a judgment of the Circuit Court of Norfolk county in an action on the case for malicious prosecution. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Herbert L. Britton* and *Jeffries & Lawless,* for the plaintiff in error.

*Brooke & Elliott,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

On the 23d of December, 1900, the Atlantic Coast Line Railway procured a warrant for the arrest of A. H. Evans, charging him with the larceny of a pair of shoes, the goods and chattels of the company. The prisoner was taken before a justice of the peace and found guilty. From this judgment he appealed to the County Court of Norfolk county, where the case was continued from time to time until the 17th of July, 1901, when it was dismissed, and the prosecution finally terminated. Thereupon, Evans brought suit against the Atlantic Coast Line Railway, charging it with having maliciously and without probable cause charged him with larceny and caused his arrest, and claiming damages.

This action was tried, and the jury rendered a verdict in favor of Evans for two thousand dollars, which was set aside as being contrary to the law and the evidence; to which order the plaintiff excepted and tendered a bill of exceptions which contains a record of the proceedings upon that trial, which was signed and made a part of the record. At a subsequent day the

whole matter of law and fact was submitted to the court, which entered judgment for the defendant, and thereupon a writ of error was obtained from this court.

The only questions which we need to consider are those relating to the first trial. It is contended on behalf of plaintiff in error that the court erred in setting aside the verdict; that the jury had been properly instructed, and the evidence warranted their finding.

In *Scott* v. *Shelor,* 28 Gratt. 891, it was held that in an action for malicious prosecution, to warrant a verdict and judgment for damages, it must be proved on the part of the plaintiff: First, that the prosecution alleged in the declaration has been set on foot and conducted to its termination, and that it ended in the final acquittal and discharge of the plaintiff. Second, that it was instigated or procured by the co-operation of the defendant. Third, that it was without probable cause. Fourth, that it was malicious.

In *Graves* v. *Scott,* 104 Va. 372, 51 S. E. 821, it was held that the first requirement is sufficiently met where it appears that the particular prosecution has ended favorably to the accused—that there need not be a final acquittal, but that the reasonable rule seems to be "that the technical prerequisite is only that the particular prosecution be disposed of in such a manner that this cannot be revived, and the prosecutor, if he proceeds further, will be put to a new one."

That the prosecution in this case had ended, within the meaning of the rule, and that it was instigated and procured by the co-operation of the defendant cannot be doubted.

Malice, it is said in *Scott* v. *Shelor, supra,* may be inferred from the want of probable cause, but want of probable cause can never be inferred from the plainest malice.

We shall, therefore, inquire next whether probable cause existed in this case to justify the defendant in error in the course which it pursued; and if it shall be found that such probable cause did not exist, its absence will be sufficient to warrant the inference of malice.

The facts are as follows: Evans was employed by the Atlantic Coast Line Railway as a watchman at its Pinner's Point depot. A number of articles had been stolen from the custody of the railroad at that place, and it employed a Richmond detective to go down and make investigation, and, if possible, to discover the thief. The detective, acting upon information, went to a bar room kept by one Wilkins, and asked if certain packages had been left there by Evans. Wilkins replied that he was informed by Thomas, a colored employee, that three bundles had been left there by Evans, and thrown upon a top shelf in the bar room. These bundles were taken down. One of them contained a pair of old trousers, the second a pair of old shoes, and the third a pair of shoes which had been abstracted from the custody of the railway. Armed with these facts the detective and the forwarding agent of the railway company consulted counsel, who advised them, upon the facts communicated to him, that there was probable cause for the arrest of Evans. Thereupon a warrant was sworn out against him, he was taken before a justice of the peace, found guilty, and an appeal was taken to the County Court, where it remained for some months, and was finally dismissed by the court.

The testimony for the plaintiff in error tended to prove the following facts: That in the latter part of September, or early in October, 1900, he had been down in North Carolina, where he had formerly resided, and that upon his return, which was not later than the 10th or 12th of October, he left three packages at the barroom of Wilkins, with the colored employee, Thomas;

that one of these packages contained an old pair of trousers, another an old pair of shoes, and the third a pair of new shoes which he had purchased when in North Carolina.

It further appeared that on October 13, 1900, a shipment of shoes was made by A. E. Nettleton, of Syracuse, N. Y., to Bullock and Fleming, of Montgomery, Ala., and that it was from this lot of shoes the pair was taken, with the larceny of which Evans was charged.

Shoes shipped by freight from Syracuse, N. Y., would not reach Pinner's Point in less than two or three days; or, however that may be, it is certain that shoes which were shipped from that point on October 13 were not at Pinner's Point on October 12. It is highly probable that they were not there for several days after their shipment. According to the testimony of Thomas, the only shoes belonging to Evans, left by him, or any one for him, at the barroom of Wilkins were left not later than the 12th day of October.

It further appears that the depository of the shoes was not under the control of Evans, nor used exclusively by him; that it was a place in which, or at which, the patrons of Wilkins' bar room were in the habit of leaving packages, and that several were so left during the period covered by this investigation. Upon these facts, we think the jury were warranted in finding that no probable cause existed for the charge made against Evans.

But it is said that the railroad is protected by the advice of counsel.

In order that such advice may be a shield against a suit for malicious prosecution, the burden is on the defendant to prove that he sought counsel with an honest purpose of being informed as to the law; that he made a full, correct, and honest disclosure to his counsel of all material facts in his knowledge bearing on

the guilt of the plaintiff, and that he was in good faith guided by the advice of counsel in causing the arrest of the plaintiff. *Jones* v. *Morris,* 97 Va. 43, 33 S. E. 277.

When the detective went to confer with counsel as to the propriety of the arrest, he told him that he had found shoes which corresponded with the mark and the number of the shoes which had been shipped by Nettleton & Co. to Bullock & Fleming over the Atlantic Coast Line road; that he had found them at Wilkins' barroom; that Evans had a room there; that he was a watchman for the Atlantic Coast Line, and that he had a room there in which to sleep in the day time, or the night time, when he was off duty; that the shoes were not found in Evans' room, but in Wilkins' barroom, but they had been left there by Evans for safe keeping; that he had not taken them upstairs to his room as a mere matter of convenience, saying that he would call for them. The attorney "inquired who would testify to that, or who would say that they were brought there by Evans; and the reply was that Wilkins or his man in the store had given him that information; that the shoes were not the only bundle that was left there at the same time, but there were two other bundles, one an old pair of trousers and the other an old pair of shoes; that they had all been left at the same time, and the trousers and old shoes and the new shoes had all been brought there at the same time and left by Evans." The attorney then made inquiry as to "whether it was certain that Wilkins, or Wilkins' people, would testify to the fact that the shoes had been brought there by Evans; if there was any doubt about that fact; and he was informed that there was not, and that these witnesses would testify to that fact." And thereupon the attorney said: " 'Why, you have got a case that the law itself makes a case of *prima facie* guilt. Here the goods are stolen, and they are found in the possession recently of a party who has

no title to them, and, as we lawyers call it, it is the recent possession of stolen goods which makes it a *prima facie* case, and that the men should be arrested." In order to impress the importance of the fact upon the detective, the attorney told him that "it was a vital question that there would be testimony of Wilkins or his clerk that the shoes had been left there by Evans"; and he has assured that such testimony would be adduced.

The facts, as they appear in the record, upon that point are as follows: That when the detective went to Wilkins he was told that Wilkins knew nothing upon the subject, except what he had been told by Thomas. The detective in his testimony states that he went to Wilkins' barroom and asked if Evans had left any parcels there, and Wilkins replied that Thomas had told him that Evans had left some parcels there. These parcels were examined, and among them were found the shoes which had been stolen. He told Wilkins to keep the new shoes subject to his order and not to surrender them to Evans; and his testimony then proceeds:

"Was that the time you saw the negro Peter?"

"I saw the negro that evening."

"You saw the negro after you left Wilkins?"

"I waited there for him, and saw him that evening. I waited around there until I saw him. I had a talk with Thomas, and Thomas told me Peter was the one that brought them there, and I saw Peter, and he told me he went to Mr. Evans' boarding house and brought them there."

That is the only conversation which the detective claims to have had with Thomas. In a former part of his testimony he was asked with respect to the same occasion:

"Did you question Thomas?"

"No, sir, I did not."

"Do you know, or did you inquire, when Evans had brought any shoes to Wilkins' barroom?"

"Yes, sir."

"From whom did you inquire, and what answers did you receive?"

"I got the message there that Peter had brought the shoes there. Mr. Evans had got Peter to go after these things. I think from County street, and bring them down to the bar, and then Peter stated to me that he carried the shoes there, and that Mr. Evans got him to carry the cartoon boxes out in the back yard and burn them; but, as I told you before, that is hearsay evidence. I don't know whether Mr. Evans did that, but that is the information that Peter gave me after I got the shoes."

Thomas denies that he was ever questioned upon the subject by the detective. The detective both affirms and denies; and the jury, we think, may well have believed the statement of Thomas. Upon this vital qustion, therefore, as to who left the shoes at the barroom, the only evidence is that Wilkins told the detective that he had been told by Thomas that the shoes had been left there by Evans. Now if the detective had made careful inquiry of Thomas, he would have learned that the packages to which Thomas referred had been left there not later than the 12th of October, and that the shoes which were charged as the subject of theft did not leave Syracuse until the 13th day of October. The detective says that he talked with Thomas, but Thomas denies this, and if the detective ever examined him at all upon the subject, he must have done so in a very perfunctory manner, for he failed to elicit the important fact as to the date at which the packages had been left by Evans. Wilkins knew nothing except what he had heard from Thomas, and so informed the detective. The whole case, then, turns upon the statement of Thomas, who, as we have seen, denies that he was questioned

by the detective, or that he made to him any statement whatever.

Upon this state of facts the jury found that there was no probable cause for suing out the warrant, and that there had not been a full, correct, and honest disclosure made to counsel of the material facts within the knowledge of the detective, or which should have been within his knowledge had he made a reasonably careful investigation bearing on the guilt of the plaintiff. It was solely upon the information of the detective that the warrant was sworn out, and he is, therefore, to be regarded as the agent of the railroad company.

The instructions given to the jury at the trial correctly stated the law, and the facts were sufficient to support the verdict. We are, therefore, of opinion that the court erred in setting it aside, and this court will proceed to enter such judgment as the Circuit Court ought to have entered.

BUCHANAN, J., dissenting:

I cannot concur in the opinion of the majority of the court. It seems to me the trial court properly set aside the verdict of the jury on the first trial, and that the judgment complained of should be affirmed.

Independently of the advice of counsel and of the fact that the plaintiff was convicted by the justice before whom he was tried, it seems to me the uncontradicted evidence in this case shows that when the railway company instituted the prosecution complained of, it had knowledge of such a state of facts and circumstances as would excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff was guilty of the crime for which he was prosecuted. This being so, it had probable cause for its action, and is not liable

in this case for damages, although it subsequently appeared that the plaintiff was not guilty.

If the facts and circumstances disclosed by this record are not sufficient to defeat a recovery in a suit for malicious prosecution, the public interests will suffer, for few persons will be willing to run the risk of being mulcted in heavy damages because of honest mistakes made in instituting criminal prosecutions.

It does seem hard that a man may be prosecuted for a supposed crime and yet have no redress against the prosecutor, and yet this must frequently be so, for the preservation of the peace and order of society requires that even the innocent may be compelled to submit to such inconvenience and hardship rather than citizens should be deterred from instituting prosecutions where there is reasonable or probable cause to believe the accused guilty. Good faith on the part of the prosecutor is always an important if not a vital element of inquiry, and is always a sufficient justification, except where an unreasonable credulity is manifested in inducing the prosecutor to draw conclusions of guilt which persons of ordinary prudence and judgment would not have drawn. Newell on Malicious Pros. 269.

The prosecution complained of was, in my judgment, instituted in good faith and with probable cause, and the prosecutor should not be held liable for damages in this action.

*Reversed.*