# Richmond.

## N. C. TURNER v. M. BRENNER.

### January 17, 1924.

1. BILLS, NOTES AND CHECKS—*Bad Check Law, Acts 1920, page 561—Fraudulent Intent.*—The act of March 20, 1920 (Acts 1920, page 561), provides that if any person obtain money or property with a fraudulent intent by means of a worthless check, such person shall be deemed guilty of larceny of the money or property so obtained, and that the lack of sufficient funds on deposit with the drawee to pay such check shall, as against the maker thereof, be *prima facie* evidence of fraudulent intent. The gravamen of the offense is the fraudulent intent, and the lack of funds creates a *prima facie* but not a conclusive presumption of such intent.

2. BILLS, NOTES AND CHECKS—*Bad Check Law—Rebutting Presumption of Fraudulent Intent—Case at Bar.*—In the instant case, an action for malicious prosecution, defendant undertook to proceed against plaintiff under what is known as the bad check law. Plaintiff was acquitted and brought his action against defendant for malicious prosecution. Plaintiff admitted that the check in question was not paid, and that he did not have on deposit at the bank sufficient funds to pay it, but he contended, and there was evidence to support his contention, that defendant accepted the check with knowledge that it was not good at the time and with an agreement on his part to hold it until a later date.

   *Held :* That if this was true, as the jury evidently believed it to be, it eliminated the *prima facie* presumption which under the statute would have arisen from the unexplained fact that sufficient funds were not on deposit to meet the check. And so far as this *prima facie* presumption was concerned, the case was simply not within the intendment of the statute.

3. BILLS, NOTES AND CHECKS—*Bad Check Law—Presumption of Fraud—Payee Informed of Lack of Funds.*—The mere lack of funds of the maker of a check at the bank upon which it is drawn will not give rise to a presumption of fraud if the payee of the check is informed by the maker at the time it is given that the money to meet it is not on deposit. In such case the payee takes the chance of the check being made good later, and the arrangement merely represents a form of credit extended to the maker. It might well be possible to give a

check under such circumstances with a fraudulent intent and effect, but the case would not be within that clause of the statute which provides for a *prima facie* presumption of such intent.

4. BILLS, NOTES AND CHECKS—*Bad Check Law—Malicious Prosecution— Questions for Jury.*—In the instant case, an action for malicious prosecution under the bad check law, plaintiff's testimony by which he attempted to show that defendant was aware of the fact that plaintiff had not sufficient funds at the bank to meet the check and agreed to give him time, was discredited by the fact that plaintiff gave several other bad checks about the same time, and that he went into voluntary bankruptcy a few days thereafter. Furthermore, plaintiff's testimony was in conflict with defendant's on almost every material particular.

   *Held:* That all questions as to the weight of the testimony and the credibility of the witnesses were within the province of the jury and were settled adversely to defendant by the verdict.

5. MALICIOUS PROSECUTION—*Verdict for Plaintiff—Evidence Sufficient to Sustain Verdict—Case at Bar.*—In the instant case, an action for malicious prosecution under the bad check law, the jury found a verdict for the plaintiff which was set aside by the trial court and final judgment entered for the defendant. The evidence was sufficient on behalf of the plaintiff to warrant the jury in finding, (1) that the check in question was not given with fraudulent intent, and (2) that the prosecution by defendant was without probable cause.

   *Held:* That the trial court erred.

6. MALICIOUS PROSECUTION—*Probable Cause—Question of Law.*—What is probable cause as an abstract legal proposition is a question for the court; but where there is any conflict of evidence it is for the jury to determine whether in the particular case such probable cause existed.

7. MALICIOUS PROSECUTION—*Advice of Counsel—Full and Truthful Disclosure—Case at Bar.*—In the instant case, an action for malicious prosecution, it was claimed by defendant that he acted upon advice of counsel in the criminal prosecution which he instituted against plaintiff. Defendant, however, conceded that the statements he made to his counsel, and upon which the advice was given, were the same as those which he detailed before the jury.

   *Held:* That as the jury by finding for the plaintiff declined to believe that the statements made by defendant to his counsel were true, defendant could not rely upon advice of counsel as a defense.

8. MALICIOUS PROSECUTION—*Advice of Counsel—General Rule—Honest Disclosure.*—Advice of counsel sought with an honest purpose of being informed as to the law, and procured upon a full, correct and honest disclosure of all material facts within the knowledge of the party seeking such advice, or which should have been within his knowledge if he had made a reasonably careful investigation, constitutes a complete defense to an action for malicious prosecution; but the bur-

den is on the defendant to prove that such advice was thus sought and obtained with the purpose and upon the disclosures here described, and whether such advice was thus sought and obtained is usually a question for the jury.

9. APPEAL AND ERROR—*Exceptions and Objections—Objection to Instruction.*—Where an objection to an instruction is not made the subject of an exception, it cannot be considered on appeal.

Error to a judgment of the Circuit Court of Norfolk county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*John N. Sebrell, Jr.*, and *E. L. Potter*, for the plaintiff in error.

*Broudy, Peck & Broudy*, for the defendant in error.

KELLY, P., delivered the opinion of the court.

Brenner was a flour broker and Turner was the proprietor of a bakery. Under circumstances hereinafter mentioned, Turner gave Brenner a check for $307.50 in payment for twenty-five bags of flour. The check was not paid, payment being refused by the bank for want of funds to Turner's credit, and Brenner, undertaking to proceed under what is known as the bad check law (Acts 1920, page 561), procured a warrant against Turner charging him with larceny of the flour. The result was that Turner was arrested on a felony charge, sent on to the grand jury, indicted, tried and acquitted. Thereupon he brought this action against Brenner for malicious prosecution. The jury found for the plaintiff, fixing the damages at $1,000.00, and the court set aside the verdict and entered up a final judgment for the defendant. The plaintiff is here assigning error.

The sole question presented for our decision is whether the trial court was warranted in setting aside the verdict because the same was "contrary to the evidence or without evidence to support it." Code, section 6251; *Flowers* v. *Virginian Ry. Co.*, 135 Va. 367, 383, 116 S. E. 672. We are of opinion that this question must be answered in the negative, and that the judgment complained of was therefore erroneous.

[1-3]. The act of March 20, 1920 (Acts 1920, page 561), provides that if any person obtain money or property with a fraudulent intent by means of a worthless check, such person shall be deemed guilty of larceny of the money or property so obtained, and that the lack of sufficient funds on deposit with the drawee to pay such check shall, as against the maker thereof, be *prima facie* evidence of fraudulent intent. The gravamen of the offense is the fraudulent intent. The lack of funds creates a *prima facie* but not a conclusive presumption of such intent. Turner admitted that the check in question was not paid, and that the refusal of the bank to pay it was due to the fact that he did not have on deposit with the bank sufficient funds for that purpose, but he contends, and there was evidence to support the contention, that Brenner accepted the check with knowledge that it was not good at the time and with the agreement on his part to hold it until a later date. If this was true, as the jury evidently believed it to be, it eliminated the *prima facie* presumption which under the statute would have arisen from the unexplained fact that sufficient funds were not on deposit to meet the check. The case in that event, and so far as the *prima facie* presumption was concerned, was simply not within the intendment of the statute, for obviously, the mere lack of funds would not give rise to a presumption of fraud, if the payee of the check was informed by the

maker, at the time it was given, that the money to meet it was not on deposit. In such a case the payee takes the chance of the check being made good later, and the arrangement merely represents a form credit extended to the maker. It might well be possible to give a check under such circumstances with a fraudulent intent and effect, but the case would not be within that clause of the statute which provides for a *prima facie* presumption of such intent.

Turner was buying the flour from Brenner in deliveries of twenty-five barrels each, under a sort of cash and credit plan, by virtue of which Turner got credit for each twenty-five barrel delivery by paying each time for the preceding delivery of like amount. According to Turner's testimony, Brenner knew that he was having difficulty in financing his bakery business, and Turner gave the following version of the manner in which the above mentioned arrangement was made and of the circumstances under which the check for $307.50 was given:

"I said: 'Mr. Brenner, I haven't got any money. I am here trying to make this thing go.' I said: 'You have been in the baking business yourself, you know how it is, the condition things are in this year, none of us have made anything in the baking business. I am just trying to hold on. Maybe flour will come down after awhile and I can make a little something.' He said: 'All right, Turner, I know the conditions and if you will give me a check for the ten barrels you owe me for, I will send you twenty-five barrels tomorrow.' I said: 'All right, Mr. Brenner, how much time are you going to give me?' 'Well,' he says, 'I am going to give you twenty-five barrels at the time and when you get the twenty-five barrels you can give me a check for what you already owe me, and I will go further than that;

if you haven't got the money in bank, if you will send me a note along with the check asking me to hold it over for a few days, I will do it.'    I said: 'All right, Mr. Brenner, I thank you very much'. ''

Further evidence for the plaintiff was to the effect that the flour was delivered each time by Brenner's driver, who, as he made the several deliveries, was to receive payment each time for the last preceding installment, and that the $307.50 check was given to the driver by Turner's clerk, accompanied by a note to Brenner, pursuant to Turner's instructions, requesting that the check be held until the following Saturday; that the next day after the check in question was given, Brenner called on Turner with the complaint that a previous check had been returned unpaid for want of funds; that Turner then arranged payment for such previous check, and that Brenner thereupon voluntarily agreed that he would hold the check for $307.50 until Monday, instead of Saturday, saying: "Turner, you asked me to hold this check over until Saturday. Instead of holding it over until Saturday, I will hold it over until Monday."

It was contended before us that this statement of Brenner related, not to the check upon which the criminal prosecution was based, but to the previous check given at the time of a previous delivery of flour. A careful consideration of the evidence, however, makes it very clear that Brenner must have been talking about the check for $307.50, and that when he said, "you asked me to hold this check," he had reference to the request contained in the note which Turner's clerk said she sent along with the check.

[4] Turner undertook to explain that he allowed the previous check, above referred to, to be returned unpaid because of a mistake made by his bookkeeper as

to his bank balance, and he is, to some extent, corroborated in this respect by the testimony of his bookkeeper. This explanation does not appear to us to be very satisfactory, and it is further discredited by the fact that Turner gave several other bad checks about the same time, and that he went into voluntary bankruptcy a few days thereafter. Furthermore, Brenner's testimony is in conflict with Turner's on almost every material particular. But all questions as to the weight of the testimony and the credibility of the witnesses were within the province of the jury and were settled adversely to Brenner by the verdict.

[5, 6] Without attempting to set forth the evidence in further detail, we feel constrained to hold, after carefully considering the entire record, that it was sufficient on behalf of the plaintiff to warrant the jury in finding, (1) that the check in question was not given with fraudulent intent, and (2) that the prosecution by Brenner was without probable cause. In *Clinchfield Coal Corporation* v. *Redd*, 123 Va. 420, 443, 96 S. E. 836, 843, we said: "What is probable cause as an abstract legal proposition is a question for the court; but where there is any conflict of evidence it is for the jury to determine whether in the particular case such probable cause existed." In *Lommander* v. *Prov. Relief Ass'n*, 126 Va. 455, 463, 102 S. E. 89, 91, we said: "Malice and want of probable cause in actions for malicious prosecution are usually questions for the jury and in this case there was evidence upon which the jury might have found the existence of both of these essential elements to the right of recovery." In *Director General* v. *Kastenbaum* (Nov. 12, 1923), 263 U. S. 25, 44 Sup. Ct. 52, 68 L. Ed. ——, Mr. Chief Justice Taft delivering the opinion of the court, said: "Probable cause is a mixed question of law and fact. The court submits the evidence of it to the

jury with instructions as to what facts will amount to probable cause if proved."

[7] It is claimed by Brenner that he acted upon advice of counsel in the criminal prosecution which he instituted against Turner, and he relies upon that fact as a complete defense to this action. He concedes, however, that the statements he made to his counsel, and upon which the advice was given, were the same as those which he detailed before the jury, and, as we have seen, the jury declined to believe that these statements were true. The contention of the defendant in this respect is, therefore, concluded against him by the principles announced in the *Commander Case, supra,* wherein it was said:

[8] "It may be considered settled that advice of counsel sought with an honest purpose of being informed as to the law, and procured upon a full, correct and honest disclosure of all material facts within the knowledge of the party seeking such advice, or which should have been within his knowledge if he had made a reasonably careful investigation, constitutes a complete defense to an action for malicious prosecution; but the burden is on the defendant to prove that such advice was thus sought and obtained with the purpose and upon the disclosures here described, and whether such advice was thus sought and obtained is usually a question for the jury. 1 Co. Torts (3rd ed.), page 333; Burks' Pl. & Pr. page 237; *Evans* v. *Atlantic Coast Line Ry. Co.,* 105 Va. 72, 76, 80, 53 S. E. 3."

[9] There was a cross assignment of error by the defendant with respect to an instruction given at the instance of the plaintiff, but the objection to that instruction was not made the subject of any exception, and it was conceded at the argument of the case that the cross assignment could not be availed of. We may add, how-

ever, that we have considered the instruction in question and find it in accord with the law as applied to the facts of this case.

The case was submitted to the jury upon instructions which fully and fairly presented the defendant's theory and every defense upon which he relied.   It cannot be said that the verdict of the jury was contrary to the evidence or without evidence to support it, and it follows that the judgment must be reversed and a final judgment entered here for the plaintiff for the amount of the damages fixed by the verdict of the jury.

*Reversed.*