## LAW AND CHANCERY COURT OF THE CITY OF NORFOLK

Timberlake Industries, Inc.

v.

Steven Aurilio, etc.

May 25, 1972

Case No. (Law) 1070

BY JUDGE EDWARD L. RYAN, JR.

The current question before the court is as to whether defendant can maintain his counterclaim for alleged malicious prosecution. Plaintiff prosecuted defendant for issuing a check that was not honored by the bank because of "Insufficient Funds." The criminal prosecution resulted in an acquittal. Plaintiff moves for summary judgment on the counterclaim.

Defendant contends that his evidence will show that there had been a lengthy "course of dealings" between the parties in which plaintiff would agree to hold certain checks without deposit for differing periods of time until advised by defendant that sufficient funds to cover the checks had been deposited in the bank. One of defendant's exhibits is check number 354, dated April 26, 1971, in the sum of $1,104.21, with the express notation on the check, "Hold till 5/26/71." In his letter of April 21, 1972, counsel for defendant states, "The court will recall that [counsel for plaintiff] admitted in oral argument that there was evidence of prior credit arrangements between plaintiff and defendant and that this was the basis of the dismissal of the criminal charges, in spite of the fact that no specific memorandum appeared on the face of the check in question." The court has no independent recollection as to said admission, but an examination of the correspondence reveals no denial of same by plaintiff's counsel.

The defendant attacks the plaintiff's motion for summary judgment on the counterclaim on two grounds: (1) The statutory notice required, prior to any criminal prosecution by Code of Virginia § 6.1–117, is fatally defective; and (2) that the two checks issued on May 1, 1971, when considered *in pari materia*, reveal that there was a credit or "hold" arrangement between the parties, despite the fact that there was no notation of any collateral agreement written upon the instruments at the time they were given by the defendant, as required by Code of Virginia § 6.1–118.

## Defective Notice

Defendant admits that timely notice was given by registered mail (as required by the statute) and that the prosecution occurred long after the expiration of the five-day waiting period set out in the statute. In pertinent part, the language of the notice letter is as follows: "The above amount is to cover check # 363 in the amount of $2,511.30 and check # 354 in the amount of $1,104.21. Check # 363 is dated May 1, 1971, and was issued to cover invoice *# 2677* and *# 2678* . . . ." (Emphasis added.) (The criminal prosecution was based on check # 363 only.)

Defendant contends that check # 363 on its face shows that it was issued to cover invoices # 2351 and # 2340 and *not* invoices # 2677 and # 2678.

Admittedly, if there had been no reference to invoices, then it would have been perfectly valid. A reading of the two above-mentioned statutes indicates to the court that nothing more is required of the payee than to present the check for payment and then advise the maker of any dishonor. Of course, it seems that there must be a sufficient identification of the check and the amount thereof. There is no requirement to state what the check is in payment of, or what it is to cover, or what, if any, invoices are involved. This being so, the court concludes that the incorrect mentioning of invoices is merely inconsequential surplusage and thus holds that the letter notice is valid and in compliance with the requirements of the statutes.

## The Two Checks Issued on May 1, 1971

Check # 105 in the amount of $381.35 was drawn on May 1, 1971, on the People's Bank of Virginia Beach. It bears the notation:

```
# 2351          10% down
# 2340          + freight
```

(This check was honored by the bank.)

Check # 363 in the amount of $2,511.30 was drawn on May 1, 1971, on the First National Bank of Norfolk. It bears the notation:

```
Bal.            90% on
# 2351
# 2340
```

(This check was not honored and was returned with notation "Insufficient Funds.")

Defendant urges that the manner of the issuance of the two checks "10% down" and "Bal. 90%" clearly demonstrates that a credit or hold agreement existed between the parties. He further contends that no other reasonable conclusion can be applied to the transaction and that he should be allowed to offer oral and documentary evidence of the "prior dealings" between the parties and oral evidence as to the agreement of the parties when the two checks were issued on May 1, 1971.

With equal vigor, counsel for plaintiff contend that if the court is to indulge in presumptions, it just as readily could conclude that defendant meant to draw 10% on one bank and 90% on the other.

### Conclusion

It is more than apparent to the court why the criminal prosecution failed, for there, all "prior dealings" and oral evidence of collateral agreements were admissible. It is patent that upon the introduction of such evidence, there was, at the very least, a reasonable doubt as to plaintiff's guilt.

But here we are dealing with a civil matter, and the court is required to apply the strict, and perhaps harsh, provisions of Code of Virginia § 6.1–118. The last provision of the section required the plaintiff to comply with the notice provisions of § 6.1–117. The court has already held that this was done. The clear mandate of § 6.1–118 is as follows:

In *any* civil action growing out of an arrest under § 6.1–115 or 6.1–116, *no* evidence of statements or representations as to the *status* of the check, draft, order, or deposit involved, *or of any collateral agreement with reference to the check*, draft, or or-

der shall be admissible *unless such statements, or representations, or collateral agreement be written upon the instrument at the time it is given by the drawer.* (Emphasis added.)

The section further provides if payment of the check is refused by the bank, then any person causing an arrest of the drawer "shall be *conclusively deemed* to have acted with reasonable or *probable cause* in any suit for damages that may be brought by the person who drew or uttered such instrument" (including certain additional requirements of the prosecutor, which have clearly been met by plaintiff in this case).

In *Black's Law Dictionary*, 386 (3d ed.), the definition of "conclusive" is given as follows:

Shutting up a matter; shutting out all further evidence; not admitting of explanation or contradiction; putting an end to inquiry; final; decisive.

Counsel for plaintiff supplied the court with all of the applicable Acts of Assembly from 1920 to date, along with certain other material. A reading of same shows that the case of *Turner v. Brenner*, 138 Va. 232 (1924), relied upon by defendant, has been legislatively overturned and is no longer binding on the courts of Virginia. Counsel for plaintiff may present for entry an order sustaining the motion for summary judgment on the counterclaim, saving unto defendant his exceptions.