## Richmond

### LOUIS CHIPOURAS

### v.

### AJ&L CORP., ET AL.

April 30, 1982.

Record No. 791731.

Present: All the Justices.

*Milton Paul Miller (Horwitz and Miller, P.C.,* on briefs), for appellant.

*Stuart Bateman (H. Vincent Conway, Jr.; Bateman, Downing & Conway, P.C.,* on brief), for appellees.

THOMPSON, J., delivered the opinion of the Court.

Angelo Mageras swore to a criminal warrant charging Louis Chipouras with the offense of grand larceny. The police arrested Chipouras, but at the preliminary hearing, the court dismissed the felony warrant. Chipouras then sued Mageras and AJ&L Corporation (AJ&L) for malicious prosecution. After a two-day trial, the lower court struck Chipouras' evidence and entered summary judgment for the defendants on the ground that Mageras had probable cause for swearing out the warrant. Advice of counsel formed the basis of the probable cause defense. We reverse the judgment of the trial court and remand for a new trial.

The facts reveal that in 1975, Mageras, president of AJ&L, leased a restaurant facility in Williamsburg to three brothers, Louis, George, and Peter Mikedes, and the Aire 'N Earth Corporation (Aire 'N Earth). During the restaurant's renovation, AJ&L hired Chipouras, a cousin of the Mikedes brothers, to install drywall. When the restaurant, called the Green Leafe Cafe, opened in September, 1975, Chipouras remained as a cook. The relationship between Chipouras and Mageras became very hostile.

In 1976, Aire 'N Earth suffered financial difficulties and could not pay its rent. Mageras met with the Mikedes brothers and Chi-

pouras. Mageras testified that Chipouras held himself out as an officer, director, or "one of the principal partners," of Aire 'N Earth. Both Louis and George Mikedes denied that Chipouras was an officer, director, or stockholder of Aire 'N Earth.

On June 29, Mageras obtained a judgment for possession of the premises. The judgment permitted Aire 'N Earth 24 hours to post bond or to vacate. Fearing that the Mikedes brothers or Chipouras might "go in there and tear the place up and take everything away overnight," Mageras called his attorney, A. B. Smith, Jr. Smith had represented Mageras as a client for 25 years and was thoroughly familiar with Aire 'N Earth's financial problems. Mageras asked Smith what he should do if "they" were to take AJ&L property. Smith testified that he remembered discussing the possibility of theft with Mageras, but could not remember the number of phone calls or sequence of the information he received. He remembered advising Mageras that if "they" took AJ&L property, he "could . . . or should" swear out a criminal warrant "against all of them." He explained that "all of them" included "the three Mikedeses and the one other individual whose name I don't think ever came up in our conversation, but of whose existance I knew." Mageras had inquired if it made any difference that one or more of "them" were in or en route to Baltimore. Smith replied that it did not. Smith most clearly recalled the conversation concerning an item which had already been taken.

The next day, June 30, Mageras visited the restaurant and discovered a stained glass panel missing. Seeing Louis Mikedes, he demanded "who's got my stuff here?" Louis replied, "we got our stuff." Mageras tried to call Smith or one of his partners. Unable to reach the attorneys, he accompanied the police officer to the magistrate's office. Mageras testified that he swore out a warrant against the four principals of Aire 'N Earth—the Mikedes brothers and Chipouras—according to Smith's advice. An attorney from Smith's firm reached Mageras at the magistrate's office before the warrants were executed. Mageras told the attorney "you [are] fired for this case."

Chipouras testified that he was in Silver Spring, Maryland, visiting when the alleged theft occurred. He did not know of the eviction or the removal of the stained glass until he returned after issuance of the warrant. The Mikedes brothers corroborated Chipouras' testimony.

In *Pallas* v. *Zaharopoulos,* 219 Va. 751, 754, 250 S.E.2d 357, 359 (1979), we set forth the elements of an action for malicious prosecution in Virginia:

> [A] plaintiff must allege and prove (1) that the prosecution was set on foot by the defendant and that it terminated in a manner not unfavorable to the plaintiff; (2) that it was instituted [by], or procured by the cooperation of, the defendant; (3) that it was without probable cause; and (4) that it was malicious.

If a defendant proves that he had probable cause to institute the criminal prosecution, he is immune from an action for malicious prosecution. He acts with probable cause when he acts on advice of counsel. To establish the defense, he must prove (1) that he sought the advice of reputable counsel because he wished to be informed of the law; (2) that he fully, correctly, and honestly disclosed all material facts which he knew—or should have known upon a reasonably careful investigation—about the guilt of the party accused; and (3) that in good faith he followed his counsel's advice in causing the plaintiff's arrest. *Pallas, supra* at 755, 250 S.E.2d at 359-60. *Noell* v. *Angle,* 217 Va. 656, 660, 231 S.E.2d 330, 333 (1977); *Bain* v. *Phillips,* 217 Va. 387, 394, 228 S.E.2d 576, 581 (1976). The advice-of-counsel defense is a complete defense even though the attorney gives incorrect advice. *Spitzer* v. *Clatterbuck,* 202 Va. 1001, 1004, 121 S.E.2d 466, 468 (1961). Usually, this defense presents a jury question, but if reasonable minds cannot differ, then the court decides the question as a matter of law. *Pallas, supra* at 755, 250 S.E.2d at 360; *Noell, supra* at 661, 231 S.E.2d at 333.

We consider only whether Mageras established his defense and whether the trial court properly ruled on it as a matter of law. The evidence reveals Mageras made one or two attempts to call Smith on June 29 to find out what his legal remedies were should the Mikedes brothers or Chipouras remove any property other than their own from the Green Leafe Cafe. Although angry with his lessees, Mageras' purpose in asking Smith's advice was to find a legally proper method of protecting his proprietary interest. His actions arguably fulfill the first and third elements of the advice-of-counsel defense.

▇▇▇ He fails to establish the second. He could not possibly disclose all the material facts of the theft because it had not yet occurred. Mageras had no way of knowing who would be involved or the extent of their involvement. Larceny is a crime of personal involvement requiring the identification of the perpetrator. Our jurisprudence firmly establishes the concept that criminal liability or criminal guilt is personal and not established by kinship or association. In *Commander v. Provident Relief Ass'n.*, 126 Va. 455, 465, 102 S.E. 89, 92 (1920), we held:

> [T]he rule in Virginia is that the disclosure required in order that the advice based upon it may constitute a shield against a suit for malicious prosecution must not only cover all the relevant facts within the knowledge of the prosecutor, but must include also material facts which would have been within his knowledge *if he had made a reasonably careful investigation as to the guilt of the party accused.* [Emphasis added.]

*Accord, Evans v. Atlantic Coast Line Ry.*, 105 Va. 72, 53 S.E. 3 (1906). M. Burks, *Common Law and Statutory Pleading and Practice* § 150 at 261-62 (4th ed. T. Boyd & W. Koontz 1952). A victim cannot indiscriminately seek the arrest of an individual for a crime. He must have some basis for believing that the individual is guilty.

The facts of this case are unusual. When the defendant visited the premises on June 30, he concluded that the alleged crime was then in progress. Mageras never asked Louis Mikedes to explain who he meant when he said "we got our stuff." He never even inquired whether the three brothers and Chipouras were in town on June 29 and 30. Mageras' efforts to contact Smith on June 30 show that he felt unsure about his actions and desired further legal advice. Mageras' refusal to talk to Smith's associate when the attorney returned Mageras' call at the magistrate's office reveals that Mageras had no intention at that point of seeking, obtaining, or following any advice given. Mageras simply swore out warrants against all four men without making a reasonably careful investigation or waiting until he could consult counsel.

▇▇▇ Mageras could not properly infer Chipouras' guilt from Louis Mikedes' presence on the premises. The only thread of liability lies in the existence of a business association. In testing

probable cause, the court must look only to the time when the action complained of occurred. *Bain* v. *Phillips,* 217 Va. at 394, 228 S.E.2d at 581; *Forbes & Allers* v. *Hagman,* 75 Va. 168, 180 (1881).

█ The advice of counsel given on June 29 was hypothetical and contingent upon future events. It could not be a blanket immunity extending *ad infinitum.* When the anticipated events began to happen, Mageras was required to test the legal advice given against what was actually taking place. If "all of them were taking his stuff," then he could get warrants against all of them. As a corollary, if one were not taking his stuff, then Mageras was not justified in getting a warrant against that one. When the scenario departed from the script, he could no longer rely upon the outdated advice. The duty of a reasonably careful investigation required him to update the advice in the light of new facts. Apparently, he tried to do so when he telephoned Smith. We test probable cause and its underlying component, advice of counsel, by what actually happened, not by what was predicted.* We hold that this defense was unavailable to Mageras and AJ&L.

█ Chipouras assigned two further errors. During the cross-examination of Smith, Chipouras' counsel attempted to ask the following question:

> If I should tell you that Angelo Mageras says that he did not know, because he didn't inquire, that Mr. Chipouras was out of town until he heard it later in Court, Criminal Court, then can you offer an explanation as to how he could have told you that the night before?

Upon objection, the court ruled that it was improper because counsel may not ask one witness to comment on the testimony of another. We agree with the trial court.

Keeping in mind that examination of witnesses lies within the trial court's sound discretion, we will only interfere when the trial court has plainly abused its discretion. *Butler* v. *Parrocha,* 186 Va. 426, 433, 43 S.E.2d 1, 5 (1947). In the case at bar, the court's determination did not constitute abuse. Counsel improperly phrased his question so that he was testifying about what he had heard earlier from Mageras. *Rakes* v. *Fulcher,* 210 Va. 542, 548,

---

* Of course, when events transpire as predicted, prospective advice of counsel based upon the predicted facts will constitute probable cause.

172 S.E.2d 751, 757 (1970); *Wade* v. *Peebles,* 162 Va. 479, 498, 174 S.E. 769, 776 (1934).

Further, the question assumed the truth of Mageras' testimony, but his testimony was still an issue to be determined by the jury. An argumentative question was improper.

Chipouras argues that the court also erred when it struck the plaintiff's evidence on punitive damages. Our examination of the record convinces us that the trial court never passed on that issue; thus, we do not reach it for decision. Punitive damages remain a viable issue for the next trial.

*Reversed and remanded.*