## KIRKPATRICK v. HOLLINGSWORTH.

No. 35215.   Oct. 21, 1952.

*249 P. 2d 434.*

Disney, Huston, Klein & Melone and Henry Kolbus, Tulsa, for plaintiff in error.

Quinn Dickason, Tulsa, for defendant in error.

O'NEAL, J.   Bud Hollingsworth, a minor, brings this action by his father and next best friend, R. R. Hollingsworth, against Eva Kirkpatrick. The parties will be referred to as they appeared in the trial court.

On the 27th day of January, 1950, the defendant went to the office of the county attorney of Tulsa county, Oklahoma, and filed a complaint wherein she charged plaintiff with the crime of grand larceny in that on said date Hollingsworth did stealthily and feloniously, take, steal and carry away, one Maytag washing machine of the value of $150, the personal property of Eva Kirkpatrick. The plaintiff was arrested pursuant to a warrant based on said complaint, and was incarcerated in the county bastille for four days and then released under the circumstances hereinafter related.

Plaintiff lived with his father and mother in a house rented by them from defendant. His parents had purchased the Maytag washing machine from a Maytag dealer under a conditional sales contract. Several monthly payments having become delinquent, defendant and Mrs. Hollingsworth, plaintiff's mother, entered into an oral agreement under which defendant agreed to pay the three delinquent installments in the sum of approximately $25, and future installments if any became due. It was agreed that Mrs. Hollingsworth could retain possession of the washing machine, and that upon repayment of the delinquent installments to defendant, the machine was to remain the property of Mrs. Hollingsworth. On the 27th day of January, 1950, Jess Lingo, defendant's maintenance man, observed that the Hollingsworths were moving out of the house which they had occupied as tenants of the defendant. He immediately advised defendant that the

washing machine was being loaded in a truck by the plaintiff. Defendant immediately called the police who met her at the Hollingsworth's residence. When the defendant advised the two police officers of her claim of ownership of the washing machine, they told her that it was a civil matter and advised her to take the matter up with the county attorney. Either at the suggestion, or at the request of the police officers, plaintiff furnished defendant the address of the house to which he and his parents were moving and where the machine would be taken. To counsel's question: "Now, when you went to the County Attorney's office, Mrs. Kirkpatrick, did you tell them all of the facts, each and every one of them that you knew?" Defendant replied that she told him of an oral agreement that she had with Mrs. Hollingsworth under which she had agreed to pay the delinquent installments on the machine, and that she claimed ownership of the machine. Defendant's evidence as to the disclosure made to the county attorney leaves much in doubt. Her motive in causing the arrest of the plaintiff is disclosed by her answer to the following question:

"Q. Now, Mrs. Kirkpatrick, why did you have the boy arrested? A. For the machine to be brought back. I couldn't get the machine brought back until I did."

Again it is disclosed by the evidence of plaintiff that he and his mother, at the time the machine was being loaded on the truck, had a sufficient sum of money to pay and did offer to pay defendant the delinquent installments on the machine, but that defendant refused to accept said payments. No explanation is disclosed in the record why neither the county attorney nor the two police officers were not called as witnesses in the case.

While it is asserted that the Maytag dealer repossessed the machine for nonpayment of delinquent installments, and, further, that the defendant by paying the delinquent installments became the owner of the property, that contention is greatly weakened by the fact that Maytag's agent got the machine from the Hollingsworth's home on a prior occasion and then redelivered it to them at the house they were moving into so that the machine was at all times in the physical possession of the Hollingsworths. When plaintiff's father returned home on the day of his son's arrest and incarceration, he returned the machine to the defendant. After four days of durance plaintiff was released from the county jail, whether on bond or on his own recognizance is not disclosed. He immediately went to the defendant's home and paid her the sum of $26.50 in full settlement of the delinquent installments due on the washer. Plaintiff was given a preliminary hearing on the complaint, and at the close of the state's case he interposed a demurrer thereto, which demurrer was sustained by the court and the plaintiff was discharged.

The arrest and incarceration was given the usual notation in the public journals resulting in aspersions from his associates referring to him as a thief. When he phoned a young lady for a date, her mother, who answered the phone, told him she would not permit her daughter to go out with a thief. The record is replete with evidence that plaintiff bore a good reputation in his community. Counsel for defendant propounded the following question: "Well, did you have any feeling of hatred or ill-will toward him?" She replied: "Oh, no, the boy was the only one that went to Sunday School, and he was all right." Her testimony disclosed that her primary objective in procuring plaintiff's arrest on the charge of grand larceny was the reimbursement of payments she had advanced; the possibility of any other interest in the matter is so shadowy, indefinite and equivocal that it must be put out of consideration as altogether unreal.

Upon issues merged in the trial court a verdict was returned in favor of

plaintiff in the sum of $400, and a judgment was entered thereon. The appeal is from an order denying defendant a new trial. Unless we find substantial error in the record, we must affirm as, in our view, the verdict is supported by substantial and competent evidence.

Under proposition one defendant asserts a trial court cannot properly admit unqualified opinion evidence as to reputation, then refuse cross-examination thereon. The contention here made is that plaintiff's mother was permitted to testify that her son had a good reputation. Defendant's contention that she was not permitted to cross-examine the witness as to her knowledge of her son's reputation is not well taken. The record discloses that defendant sought to develop by cross-examination that the mother and father of the plaintiff had been charged with disturbing the peace. Clearly, the proffered evidence was neither proper cross-examination nor competent for any purpose. Moreover, as we have noted, defendant herself testified to the boy's good reputation. The court in excluding the proffered cross-examination advised counsel he could develop the general reputation of plaintiff by his own witnesses if he desired to do so. The alleged error, however, was not presented by defendant in his motion for a new trial.

Under proposition two defendant asserted that where the defendant's good faith and probable cause for her conduct are established, the trial court should instruct a directed verdict. It is claimed that even if the defendant was not the owner of the washer, that she was under the impression that she owned it, and that her contract bears out the matter of her good faith. She contends that she made a full disclosure of all the known facts to the county attorney and therefore is absolved from liability. As we have pointed out, the record does not contain a recital of disclosures made by the defendant to the county attorney. When asked if she made a full disclosure, she replied: "I sat down and told them how I got it

and how I paid, and I had the papers there." When further asked: "Did you tell them about all these other things, the conditions and circumstances?" She replied: "I told them they were behind in their rent and everything like that, yes, sir. You see they were being evicted the next day." She did not disclose to the county attorney that plaintiff advised her as to the place he was moving to and where the machine would be taken, nor that both plaintiff and his mother offered to pay the delinquent installments before the washer was removed. Moreover, the defendant did not call the county attorney in support of her contention over the disclosures made to him. Defendant relies on our decisions in Williams v. Frey, 182 Okla. 556, 78 P. 2d 1052, wherein we held:

"Where the defendant relies upon advice of counsel as a defense, the disclosure to counsel required of him before acting upon such advice is not a disclosure of all the facts discoverable, but all the facts within his knowledge. If he knows facts enough, either personally or by credible information, which, when fairly and fully stated to reputable counsel for the purpose of obtaining legal guidance, results in advice which is honestly followed in commencing the criminal proceedings, that is sufficient."

Counsel also cites the case of El Reno Gas & Electric Co. v. Spurgeon, 30 Okla. 88, 118 P. 397.

The first-cited case is based upon the court's finding that a full disclosure of known facts was not presented by plaintiff to the county attorney. The second cited case was decided upon the undisputed testimony that a full and true account of the larceny was submitted to the county attorney and that upon this finding the information charging the plaintiff with theft was filed. In this case the court held:

"In an action for malicious prosecution, where the undisputed evidence shows that the prosecutor sought the advice of competent counsel, and made a full disclosure of all the facts rea-

sonably obtainable, and in good faith acted upon such advice, probable cause for the institution of the criminal prosecution is established, notwithstanding the subsequent acquittal of the accused."

We think the present case is controlled by our pronouncement in Patrick v. Wigley, 206 Okla. 194, 242 P. 2d 423, wherein we held:

"In an action for malicious prosecution, where the prosecutor before instituting the criminal proceeding obtained the advice of the county attorney, but did not fully and fairly communicate to him all of the material facts bearing on the case of which he had knowledge, or which could have been obtained by reasonable diligence and inquiry, acting upon the advice thus received does not establish the absence of malice or negative a want of probable cause, and an action for malicious prosecution may be maintained.

"In an action for malicious prosecution the burden of proof is upon the plaintiff to prove want of probable cause, and where the uncontroverted evidence shows that the prosecutor laid all the material facts within his knowledge before a competent attorney, and acted in good faith, upon the advice given, he is exonerated from all liability; but if there is any evidence reasonably tending to prove that the prosecutor instigated the proceedings with a view of gaining some private advantage, or did not give the attorney a full and fair statement of all the material facts in his knowledge, then the case should be submitted to the jury for their determination."

We have uniformly held that if in his statement to the county attorney the informer either misrepresents or conceals material facts known to him, the doctrine of the defense of probable cause does not apply, and the informer cannot rely upon the attorney's advice to establish probable cause. Drakos v. Jones, 189 Okla. 593, 118 P. 2d 388.

Under proposition three defendant asserts it is reversible error to give exemplary damages instructions without requiring jury to find that actual damages were sustained, and in support thereof defendant cites the case of Lilly v. St. Louis & S. F. Railway Co., 31 Okla. 521, 122 P. 502. This case holds that a petition which is based on allegations of actual and exemplary damages by defendant refusing to advise plaintiff at her repeated request as to the intersecting station to change to a connecting line of the defendant railway, states a cause of action good as against a demurrer to the petition.

The record does not sustain defendant's suggestion that damages awarded were for exemplary damages only. Quite to the contrary, it must be assumed they were based upon proof of actual damages and which we find were amply established by the proof. The defendant did not request that the court submit separate forms of verdict covering actual and exemplary damages.

Under proposition four defendant asserts that probable cause is a question of law, and where facts are disputed, the court must instruct the jury what facts amount to probable cause. Under this assignment defendant challenges the correctness of the court's instruction No. 11, reading as follows:

"You are instructed further that probable cause has been defined to be such a state of facts, in the minds of the prosecution, as would lead a man of ordinary caution and prudence to believe and entertain an honest and strong suspicion that the person arrested is guilty of the crime charged. It does not depend on the actual state of whether the plaintiff was innocent or guilty, but depends upon a honest and reasonable belief of the party causing the commencement of a criminal prosecution."

No exception was taken by the defendant to this instruction, and no request was made for amplification thereof. This instruction, taken with the court's instructions as a whole, amply advised the jury as to the rule of probable cause as applied to the facts es-

tablished. In instruction No. 5, the court advised the jury that proof of the accused's acquittal of the crime charged is insufficient to show want of probable cause.

Again, in the court's instruction No. 6, the jury was advised that even if they believe plaintiff innocent of the crime charged, but believe that defendant had reasonable grounds of suspicion, supported by circumstances sufficiently strong to believe plaintiff guilty, they should find for defendant.

In the court's instruction No. 7, the jury was advised that in order to recover, plaintiff must prove malice and a lack of reasonable or probable cause. and further advised that even if the jury found that defendant was moved by malice to institute the criminal proceedings, but acted upon reasonable or probable cause, plaintiff could not recover.

Under proposition five the defendant asserts that to successfully maintain malicious prosecution action, plaintiff must prove damages. The record contains ample proof of actual damages to plaintiff. He was confined during the last four days in the month of January in the county jail; because of its crowded condition he was compelled to sleep on the cement floor which caused him to contract a bad cold; he became depressed and suffered great anxiety and mental anguish over his confinement. It was his first experience of confinement under a charge which, if established, was a felony and would result in his further incarceration; he lost time from his work; he suffered injury to his reputation and he suffered personal mortification. This court has held that a plaintiff may recover for injuries such as mental or emotional distress and injury to reputation which necessarily result from such wrongful acts without specific proof that same have resulted in such harm. Drakos v. Jones, supra.

Under proposition six defendant asserts that instructions permitting jury

to infer malice, in the absence of proper instructions relating to reasonable and probable cause, constitute reversible error. What we have heretofore said with reference to defendant's proposition four applies equally to this assignment of alleged error. The instructions, as a whole, were as favorable to the defendant as the evidence warranted. The judgment of the trial court is affirmed.

HALLEY, V. C. J., and WELCH, GIBSON, JOHNSON, and BINGAMAN, JJ., concur.