# Staunton

## Jesse Spitzer, Et Al. v. M. W. Clatterbuck.

September 8, 1961.

Record No. 5272.

Present, All the Justices.

The opinion states the case.

*V. Stephen Bradshaw* and *William A. Julias* (*Clark & Wilson*, on brief), for the plaintiffs in error.

*Robert S. Irons* (*Goldsmith & Irons*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Jesse Spitzer, William Roadcap, John Ritchey; Local 393 of Amalgamated Meat Cutters and Butcher Workmen of North America, American Federation of Labor; and Amalgamated Meat Cutters and Butcher Workmen of North America, American Federation of Labor, appellants, appealed from a judgment rendered on a jury verdict for $5,000 against them in an action brought by M. W. Clatterbuck, appellee, for malicious prosecution.

Local 393 of Amalgamated Meat Cutters and Butcher Workmen of North America, American Federation of Labor, and the international organization will be referred to at times as AFL, and United Construction Workers, affiliated with United Mine Workers of America, will be referred to as UCW.

In April, 1954, AFL was victorious over UCW in an election held by the National Labor Relations Board among the employees of the plants of Rockingham Poultry Co-operative. During the campaign, Local 393 of AFL was represented by appellants Jesse Spitzer and William Roadcap as organizers. The international organization of AFL was represented by two other organizers, Mike Betzold and appellant John Ritchey. Later the four organizers centered their attention on Swift & Company's plant in Harrisonburg, whose employees were represented at the time by a local of UCW. Each day when the employees entered and left the plant, the organizers would distribute to them pamphlets which in substance urged that they join their union.

On the morning of May 18, 1954, Mrs. Anna Rhinehart, a Swift employee and a member of the UCW local, squirted bluing fluid from

a water pistol, which she had purchased, on Spitzer, Roadcap and Ritchey as they were distributing the pamphlets to employees entering the plant. Mrs. Rhinehart then went inside the plant, changed to her work clothes, returned outside and conversed with George Thomas, an organizer for UCW who was seated in a car. M. W. Clatterbuck, a life long resident of Rockingham county and also an organizer for UCW, was not present. Mrs. Rhinehart testified that the squirting was her own idea, and that she never mentioned her plan to Clatterbuck.

Spitzer, Roadcap and Ritchey left the plant soon after the assault and contacted the sheriff who advised them to consult an attorney. Later in the day, about noon, they contacted Henry C. Clark, a local attorney, and discussed with him the squirting incident. Clark said "they told me that they were confident that this whole thing was the result of Clatterbuck's displeasure with their attempting to organize the Union, as he already had a Union in there." He advised the organizers that the evidence was sufficient to procure warrants for assault and battery against Mrs. Rhinehart. He also advised that they obtain "authentic information" as to Clatterbuck's involvement in the incident. Spitzer and Roadcap returned later in the afternoon with a statement signed by Hazel V. Bare, Roadcap's relative and an old acquaintance of Spitzer. It reads: "I the undersigned saw Anna Rhinehart take the liquid gun and give it to the U.C.W. Organizer on Tuesday morning May 18, 1954." Clark informed them that he did not think the statement was sufficient to procure a conviction of Clatterbuck.

Either later in the afternoon or the next day Spitzer returned with another statement signed by Mrs. Bare, which reads: "I saw the U.C.W. Organizer give Anna Rhinehart the squirt gun that was used on A.F. of L. Organizers in front of Swift plant May 18, 1954." This paper was delivered to Clark by Spitzer. Then a third trip was made to see Mrs. Bare and she signed the following statement: "I the undersigned employees of Swift Poultry Co. Harrisonburg, Va. was present on Monday, May 18, 1954 when Anna Rhinehart made a statement that Mr. Clatterbuck paid her five dollars to squirt some kind of blue liquid on the A.F. of L. Organizers." It also was delivered to Clark by Spitzer. The three statements of Mrs. Bare were written in longhand by Spitzer.

Clark, in the presence of Spitzer, Roadcap and Ritchey, dictated over the telephone to the justice of the peace separate warrants on their behalf charging Mrs. Rhinehart with assault and battery and

charging Clatterbuck with aiding and abetting her in the commission of the act. The three organizers then went to the police station where they swore to the warrants before the justice of the peace. On May 19, 1954, while Clatterbuck was at the county jail arranging bond for Mrs. Rhinehart, the three warrants were served upon him. He was permitted to go to a local restaurant for lunch in the custody of a police officer, who returned him to the jail. He was detained there for about five hours while his bail was being arranged. He was bonded to appear in court on May 24, 1954, at which time the trial was set for hearing on July 27, and at that time the case was further continued to the 16th day of August. Pending trial his arrest was the source of general discussion. The warrants against Mrs. Rhinehart were tried first and she was convicted. There she denied having made the statement that Clatterbuck paid her $5.00 to squirt the blue liquid on the organizers. In view of her denial, Clark moved the court to *nolle prosequi* the warrants against Clatterbuck, which was done. He testified that he made the motion "because I knew we could not prove it." Thereafter the present action for malicious prosecution was instituted.

The assignments of error relied upon here allege that the verdict is contrary to the law and the evidence; that the verdict is excessive; that the court erred in granting Instruction No. 7, and in overruling their motion to set aside the verdict and award a new trial.

Appellants contend that the verdict is contrary to the law and the evidence, because there was probable cause for securing the warrants which constitutes a legal defense to an action for malicious prosecution. They argue that the advice of counsel obtained before securing the warrants constituted probable cause and was a complete defense, and that the written statements of Mrs. Bare were sufficient to establish probable cause.

"It may be considered settled that advice of counsel sought with an honest purpose of being informed as to the law, and procured upon a full, correct and honest disclosure of all material facts within the knowledge of the party seeking such advice, or which should have been within his knowledge if he had made a reasonably careful investigation, constitutes a complete defense to an action for malicious prosecution; but the burden is on the defendant to prove that such advice was sought and obtained with the purpose and upon the disclosures here described, and whether such advice was thus sought and obtained is usually a question for the jury." *Commander* v. *Prov. Relief Ass'n,* 126 Va. 455, 464, 102 S. E. 89; *Turner* v. *Brenner,* 138 Va. 232, 239,

121 S. E. 510, 512. See *Gresham* v. *Am. Ry. Exp.*, 147 Va. 395, 400, 137 S. E. 471, 473; *American Ry. Ex. Co.* v. *Stephens*, 148 Va. 1, 16, 138 S. E. 496, 501; 12 M. J., Malicious Prosecution, § 6, pp. 312, 313, 314.

In *Virginia R. & P. Co.* v. *Klaff*, 123 Va. 260, 266, 96 S. E. 244, probable cause was defined thus: "Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected."

Since the trial court sustained the jury's verdict in favor of Clatterbuck, we must, under the well established rule, view the evidence and all reasonable inferences from it in the light most favorable to him. *Railway Express* v. *Moore*, 201 Va. 928, 931, 114 S. E. 2d 626.

There was evidence of malice on the part of the appellant organizers. On an occasion during the campaign for bargaining control of the Rockingham Poultry Co-operative, Clatterbuck was seated in his automobile at Timberville near the plant when Roadcap and Betzold approached his car and ordered him "to get away from there". Upon his failure to comply, they asked him to get out of the car, "insinuated they were much better men" than he was, and used profanity. On another occasion at Timberville, prior to the squirting incident, Spitzer, Betzold and another AFL organizer, Albert Gray, discussed throwing Clatterbuck in the river, but no attempt was made to carry out the threat. Moreover, the inference that there was malice was a perfectly legitimate one for the jury to draw from want of probable cause.

Ritchey relied upon the information furnished by Roadcap and Spitzer as to Clatterbuck's responsibility for the incident. In response to a question why he thought Clatterbuck was implicated, Ritchey said: "His position, as a whole, would indicate to me that he would be involved in it, because he is the Representative of the UCWA Locally."

The evidence shows that a full, correct and honest disclosure of all material facts was not made to Clark by appellant organizers. Mrs. Bare knew that the UCW organizer referred to in her statements was Thomas, yet his name was omitted therefrom. Spitzer had seen Clatterbuck a number of times and knew him by name. He had also seen Thomas on numerous occasions. He testified that Thomas was the UCW organizer in the car referred to in Mrs. Bare's statements, "but I didn't see Mr. Clatterbuck." This information was material and should not have been withheld from Clark, who testified that when the warrants were issued, he did not think there was any ques-

tion about the fact that Clatterbuck was present at the time of the squirting. They did not inform Clark that Mrs. Bare, who was not happy as a member of the UCW union, was Roadcap's cousin.

The jury could have believed from the evidence that the complainants on the warrants failed to make a reasonably careful investigation of the facts. Neither Mrs. Rhinehart nor Clatterbuck was consulted as to whether Clatterbuck aided and abetted in the assault and battery, and no further investigation was made as to Clatterbuck's responsibility after securing the statements from Mrs. Bare. The jury could have reasonably inferred from the evidence that there was a design on the part of the AFL organizers to discredit Clatterbuck which in turn would have been helpful in their effort to supplant the UCW union at Swift's plant. The jury were told that if they believed from the evidence that "defendants, Spitzer, Roadcap and Ritchie (sic), reasonably believed at the time the warrants were issued from the statement of Hazel Bare that Anna Rhinehart had been paid by Clatterbuck to use the squirt gun, you will find for the defendants." That issue was resolved against appellants by the jury's verdict.

We hold that the jury was justified under the evidence in finding that there was not such advice of counsel as constituted a complete defense to the action, and that probable cause did not exist for the procurement of the warrants against Clatterbuck.

■ Instruction No. 7 reads as follows:

"The court instructs the jury that, if you find from a preponderance of the evidence that the plaintiff has established the essential elements of his cause of action, as defined in other instructions of the court, against the defendants or any of them, then the plaintiff is entitled, without further proof, to recover damages for:

"(1) The harm to his reputation which resulted from such an accusation as that which was brought against him; and

"(2) The disgrace which resulted from the initiation of such proceeding."

Appellants objected to the granting of this instruction on the grounds that it told the jury that evidence of damages was not necessary, and because it failed to include the words "if any" after the word "damages". The instruction as tendered embodied the word "normally" before the word "resulted" in paragraphs "(1)" and "(2)", but it was deleted in both places by the court without objection.

The precise question whether a plaintiff, who has established the essential elements of a cause of action in a malicious prosecution case,

is entitled, without further proof, to recover damages for harm to his reputation and disgrace or distress resulting from the initiation of such proceedings has not, so far as we are advised, heretofore been presented to this court.

Instruction No. 7 was based substantially on the rule set forth in Restatement of the Law of Torts, § 670, General Damages, pp. 428, 429, wherein it is said:

"When the essential elements of a cause of action, as stated in § 653 [malicious prosecution] have been established, the plaintiff is entitled, without further proof, to recover damages for

"(a) the harm to his reputation which normally results from such an accusation as that brought against him, and

"(b) the distress which normally results from the initiation of such proceedings."

To the same effect see *Kirkpatrick* v. *Hollingsworth*, 207 Okla. 292, 249 P. 2d 434; *Canadian Pac. Ry. Co.* v. *Black*, 230 Fed. 798; *Thompson* v. *Schulz*, 34 Tenn. App. 488, 240 S. W. 2d 252; 1 Harper and James, The Law of Torts, § 4.7, p. 323; 54 C. J. S., Malicious Prosecution, § 84(a)(9), note 52; 34 Am. Jur., Malicious Prosecution, § 154, pp. 791, 192.

Distress and harm to a person's reputation naturally result from a malicious prosecution. Such damages are known as general damages, are presumed in law, and no special proof of harm is required. The amount is left largely to the discretion of the jury, subject to a review when their discretion has been abused.

We think the rule enunciated in Restatement of the Law of Torts, *supra*, is sound and we adopt it as stated. The trial court improperly deleted the word "normally" from the instruction, but there was no objection made by appellants. Since damages for distress and harm to reputation are presumed in law, the court properly refused to add "if any" after the word "damages." Under the circumstances there was no reversible error in granting the instruction.

■ Finally, appellants contend that the trial court should have set aside the verdict because (1) the jury awarded exemplary damages when they were not sought in the motion for judgment and the jury was not instructed with reference to such damages, and (2) the verdict was excessive. Aside from the fact that the motion for judgment sufficiently alleged a case for exemplary damages, a finding that the jury in this instance awarded exemplary damages would be based on mere conjecture. We cannot say that the verdict included punitive

damages as the verdict bears a reasonable relation to the injury sustained.

In actions of this kind, there is no yardstick by which a jury can measure damages. Clatterbuck was a man of good character and enjoyed a good reputation in the community in which he resided and was employed. The story of his arrest spread among his friends and business associates. The warrants issued against him were pending for three months, which caused him to endure anxiety and distress. His reputation as an organizer was adversely affected. In 34 Am. Jur., Malicious Prosecution, § 103, p. 765, it is said: "* * * The ascertainment of the damages is largely a matter for the unbiased judgment of the jury, and a verdict will not be set aside as excessive unless the damages awarded are so obviously disproportionate to the injury shown to have been sustained as to warrant the belief that the jury must have been influenced by passion or prejudice, or have been misled by some mistaken view of the merits of the case. * * *." On the record before us, the verdict was not so large as to warrant the belief that the jury was influenced by any of these elements. We hold that the verdict was not excessive and that the trial court properly refused to set it aside.

For the reasons stated, the judgment appealed from is

*Affirmed.*