**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONALD F. ROGERS,
Plaintiff-Appellee,

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA; CHARLES R. ROSE,
Defendants-Appellants.

No. 95-2579

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-95-47-R)

Argued: April 3, 1996

Decided: May 29, 1996

Before WILKINSON, Chief Judge, and NIEMEYER and
HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles Michael DeCamps, SANDS, ANDERSON,
MARKS & MILLER, Richmond, Virginia, for Appellants. Steven
Scott Biss, MALONEY, BARR & HUENNEKENS, P.C., Richmond,
Virginia, for Appellee. **ON BRIEF:** Henry C. Spalding, III, SANDS,
ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appel-
lants. John S. Barr, Fred R. Kozak, MALONEY, BARR & HUEN-
NEKENS, P.C., Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donald Rogers filed this diversity action against Unum Life Insurance Company of America and Charles R. Rose for malicious prosecution under Virginia law after having been arrested, on Unum's complaint, for burglary, grand larceny, and trespass. Following a bench trial, the district court entered findings of fact and conclusions of law, ruling in favor of Rogers and awarding him judgment against Unum and Rose in the sum of $81,938.

On appeal Unum and Rose contend that (1) numerous findings of fact by the district judge are clearly erroneous, and (2) in any event, they had probable cause to believe that Rogers committed the crimes charged, defeating the claim for malicious prosecution.

We have carefully reviewed the district court's findings and conclude that they are not clearly erroneous. And based on these findings, Rogers satisfied all of the elements of a malicious prosecution claim under Virginia law. Accordingly, we affirm.

I

On September 19, 1994, upon arriving at a sales meeting in Columbia, Maryland, Rogers was terminated from his employment with Unum Life Insurance Company of America by his supervisor, Charles Rose. Rogers testified that his meeting with Rose was short, lasting five to six minutes, and that Rose stated that Rogers need not turn in his keys and credit card at that time, but to meet him at the Richmond, Virginia, office the following day. The district court found that at no time did Rose instruct Rogers to stay away from Unum's Richmond office until they were to meet the next day. Rose's testimony about the meeting contradicted that factual finding; he testified that he specifically instructed Rogers not to return to the Richmond office.

2

After having been terminated, Rogers called the Richmond office and spoke with Myrna Seward, an office assistant. As Rogers related the conversation, he told Seward that he would like to come by to pick up his items, to which Seward responded, "Just don't," and "No, don't come by now." Rogers stated that she sounded as if she were crying. Rogers agreed not to come by while Seward was at work. He testified, however, that at no time did Seward indicate that he was not permitted to return to the office. Seward's testimony about the conversation was not inconsistent except that she testified that she told Rogers "Don, please don't put me in a position of trying to come by," because she had been instructed not to let him in, to which Rogers responded, "I'll respect that." The district court made the factual finding that Rogers agreed, upon Seward's request, not to return to the office while she was at work.

Rogers did return to his office after closing hours that evening, however, and removed his personal property from the office. When he went to the office, he discovered that his key did not open the door to the premises. But one of the building cleaning staff recognized Rogers and used a master key to let him in. Rogers testified that he had experienced a similar problem in the past with the lock and thought it was acting up again. In fact, however, after Rose terminated Rogers, he called the Richmond office to instruct them to have the office locks changed that day. Rogers had his wife bring their minivan to the office because he had a large number of plants, pictures, and miscellaneous items to move. In addition to removing his personal belongings, Rogers apparently removed a number of files and other material which he had been using to market Unum's products, including some applications from potential customers for coverage.

On the morning of September 20, when Seward came to work and discovered that Rogers had emptied his office, she called Rose, who was driving from Maryland to Richmond to meet with Rogers. Upon hearing that Rogers had entered his office, despite the lock change, Rose instructed Richmond personnel to report a theft to the Henrico Police Department and to have the police available upon his arrival in Richmond. At about 1 p.m. on September 20, Rose met with Seward and Steven Osborne, Roger's former coworker, and Officer Crowder of the Henrico Police Department. Officer Crowder was informed of what had occurred and asked a number of questions concerning

3

any Unum property that may be missing and its value. Officer Crowder was told that, in addition to the files, a refrigerator, a display easel, and a projector were missing. All agreed that these were the only items of value thought to be missing. There was, however, substantial doubt as to whether Rogers had illegally taken these items. Seward testified that there was uncertainty about who owned the refrigerator. While she made some inquiries to try to determine that, she was unable to obtain an answer. Osborne testified that the easel and the projector might have been legally in Rogers' possession since those were items assigned to him and maintained by him in his car for sales presentations. These concerns, Osborne testified, were surely communicated to Officer Crowder. But Officer Crowder's testimony contradicted that of Osborne's and Seward's. Officer Crowder testified that Rose advised him that the refrigerator belonged to Unum and that no one informed him that the projector and easel may have been lawfully in Rogers' possession. The district court found that the refrigerator belonged to Rogers, that the projector and easel had not been in the office, and that Rogers later returned company files on request.

Officer Crowder also testified that while he was at the Unum offices, Rose called Unum's in-house attorney, Heidi Osborn, for advice. Officer Crowder explained to Rose, while attorney Osborn was on the telephone, that Unum had three options--it could sue civilly to get the property back; it could proceed with a misdemeanor prosecution; or, because of the value of the missing items, it could proceed with felony prosecutions and obtain warrants for Rogers' arrest. Officer Crowder testified that Rose and Osborn collectively elected to prosecute felony charges and have the officer obtain arrest warrants. The district court found that Rose and Unum's in-house counsel instructed Officer Crowder "to proceed to take whatever action was necessary to implement the felony routine," and that Rose and Osborn "instigated the prosecution of Rogers and personally requested the issuance of criminal warrants for his arrest." While the district court acknowledged that Unum had asserted the defense that it acted on the advice of its counsel, the court found that Unum did not call Heidi Osborn as a witness at trial, even though she was present in court, to testify about the advice that she gave or the facts that she was presented with before she rendered such advice.

4

Based upon the information furnished by Unum personnel, Officer Crowder obtained a warrant for Rogers' arrest, charging him with (1) stealing an overhead projector, a refrigerator, and a flip-chart with easel, having a value of $200 or more "with the intent to permanently deprive the owner"; (2) breaking and entering Unum's offices in the nighttime "with the intent to commit larceny"; and (3) trespassing upon the property of Unum after having been forbidden to do so.

On September 27, 1994, the police department called Rogers to advise him about the warrant and Rogers voluntarily turned himself in and was booked and charged. On November 2, 1994, the Commonwealth's attorney requested the court to nolle prosequi the felony counts for burglary and grand larceny. Neither Rose nor any other Unum employee appeared to testify. The trespass charge was continued to December 7, 1994, at which time the court granted Rogers' motion to dismiss. Again neither Rose nor any Unum employee appeared to testify. Unum contends that it had not been made aware of the trial dates.

After making findings of fact, the district court concluded that (1) the prosecution was set afoot by Rose and Unum; (2) the prosecution was procured with the cooperation of Rose and Unum; (3) the prosecution was without probable cause; and (4) the prosecution was malicious. The court also found that Rose and Unum failed to prove that they relied upon the advice of counsel or that they made a full, correct, and honest disclosure to their counsel of all of the material facts.

II

Unum and Rose contend that several of the district court's findings of fact are clearly erroneous. While some of the findings may be questionable, and indeed in some instances irrelevant, we address only the findings that may be relevant to the malicious prosecution claim.

The appellants first challenge the finding that Officer Crowder "was instructed by Ms. Osborn[ ] and Rose to proceed to take whatever action was necessary to implement the felony routine." The district court chose to believe the testimony of Officer Crowder that Rose and Osborn requested that he pursue the felony prosecution of

5

Rogers. While there was conflicting testimony presented by Rose and Steven Osborne, the issue is one of credibility, and the district court had the right to credit Officer Crowder's testimony. Such a factual finding is not clearly erroneous.

Appellants also challenge the finding that "[a]t no point did anyone from UNUM mention [to Officer Crowder] the fact that the easel and projector were most generally in the possession of either Rogers or Osborne since they were used on a daily basis in making sales presentations to prospective clients." While Osborne testified, "I'm sure that was communicated to [Officer Crowder], yes," he also testified that he could not recall whether he told Officer Crowder that the easel and projector were normally taken out of the office. On the other hand, Officer Crowder testified that he was never informed of this information. Again, the district court chose not to credit Osborne's assertion that this information was communicated to Officer Crowder. The district court made a credibility determination that is not clearly erroneous.

The appellants also challenge the finding that "[a]t no time did Rose instruct Rogers to stay away from UNUM's Richmond office until he was to meet Rose at Noon on September 20." Rose testified that he specifically told Rogers not to go to the Richmond office. But Rogers testified that when he was asked whether Rose gave him any specific instructions during the termination meeting, Rose indicated he was in a hurry and said he would resolve any outstanding issues in Richmond the following day. Rogers said he was never told not to go to the Richmond office. Again the question is one of credibility and the district judge chose not to credit the testimony of Rose.

The appellants challenge the finding that Seward "requested that [Rogers] not come to the office while she was present." Again, Rogers testified to this effect and Seward's testimony is not directly in conflict.

Finally, the appellants challenge the finding that "Rose did not return telephone calls when Rogers left messages," after his termination. Rogers testified that on September 20, he called Rose twice and was unable to reach him and did not leave a message. The second time he spoke with an employee and mentioned that he was not able

6

to get a hold of Rose and that he needed to find something out. Rogers also testified that after his arrest he left Rose a message, which was not returned. It is questionable from this testimony whether sufficient evidence was produced from which to conclude that "Rose did not return telephone calls when Rogers left messages."

Despite our conclusion that the district court's material factual findings are not clearly erroneous, the question remains whether these findings legally support a claim for malicious prosecution under Virginia law.

III

In order to state a claim for malicious prosecution, a plaintiff must present evidence that (1) the prosecution was set on foot by the defendant and that it was terminated in a manner not unfavorable to the plaintiff; (2) the prosecution was instituted or procured by the cooperation of the defendant; (3) it was without probable cause; and (4) it was malicious. See Oxenham v. Johnson, 402 S.E.2d 1, 4 (Va. 1991) (citation omitted). The appellants contend that Rogers has failed to present sufficient evidence of element 3--that their effort to prosecute Rogers was without probable cause.

Probable cause, the presence of which will defeat a malicious prosecution action, is defined as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." Bain v. Phillips , 228 S.E.2d 576, 581 (Va. 1976) (citations omitted). We conclude that the facts that are not clearly erroneous support the district court's conclusion that Unum did not have probable cause to initiate the prosecution.

According to Rogers' testimony, which the district court credited, Rose and Rogers had agreed to meet at noon on September 20 when Rogers would turn in his credit card and keys. Up until that time, Rogers was entitled to enter his office and no one instructed him otherwise. His only reason for not doing so during working hours was to accommodate a fellow worker, who was apparently upset. The refrigerator that was the subject of the complaint belonged to Rogers and had been purchased by him during college years. And the easel and projector had been issued to him for sales presentations. Likewise, company files in his possession were lawfully in his possession

7

and had not yet been requested or returned. In short, under the district court's factual findings, Unum could not reasonably have believed that a trespass or burglary occurred or that Rogers had stolen anything.

Unum and Rose undoubtedly were in a difficult position. Businesses often have the unpleasant task of terminating employees and, in doing so, protecting the business from the potential responses of upset employees. One way that a business protects itself is to secure immediately its property and proprietary information. Nevertheless, the evidence in this case supports the claim that Unum and Rose may have been too aggressive in protecting their interests and that they overstepped the bounds of propriety in seeking a felony arrest of a former employee, without ascertaining the justification for such an action.

Unum and Rose contend that they acted in good faith, relying upon the advice of counsel, and that such reliance constitutes probable cause, even if the advice turns out to be incorrect. It is indeed true that the advice of counsel constitutes a complete defense under Virginia law to an action for malicious prosecution. See Spitzer v. Clatterbuck, 121 S.E.2d 466, 468 (Va. 1961). But the burden is on the defendant to prove that counsel's advice was obtained with the honest purpose of being informed as to the law, and was procured upon a full, correct, and honest disclosure of all material facts. Id. Appellants' affirmative defense of the advice of counsel fails in this case because, as the district court found, they did not prove that Rose fully, correctly, and honestly disclosed all material facts of which he knew, or should have known upon a reasonable investigation, or that in good faith he followed his counsel's advice. Indeed, Unum's in-house counsel was not called to testify as to what Rose had informed her and what advice she had given to Rose. Cf. Bill Edwards Oldsmobile v. Carey, 244 S.E.2d 767, 772 (Va. 1978) (holding that affirmative defense of advice of counsel was not available to defendant who did not call counsel to testify as to what was disclosed and did not otherwise establish that full information was communicated to counsel).

For the foregoing reasons, the judgment of the district court is

AFFIRMED.