857 F.2d 1468
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James Harvey HAMPTON, Jr., Plaintiff-Appellant,
v.
J.S. MATHIS; Mike Moretz, Defendants-Appellees.
James Harvey HAMPTON, JR., Plaintiff-Appellee,
v.
J.S. MATHIS; Mike Moretz, Defendants-Appellants.
 Nos. 87-2653, 87-2654.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 5, 1988.
Decided: Sept. 1, 1988.
Rehearing and Rehearing In Banc in No. 87-2654 Denied Dec. 14, 1988.
 
 Robert W. Mann (Young, Haskins, Mann & Gregory, P.C. on brief) for appellant.
 Isaac T. Avery, III, Special Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen.; H. Julian Philpott, Jr., Associate Atty. Gen., on brief) for appellees.
 Before PHILLIPS and SPROUSE, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 North Carolina State Troopers J.S. Mathis and Mike Moretz appeal a jury verdict against them for malicious prosecution and an award against them of compensatory and punitive damages. They contend alternatively that the district court either should have directed a verdict in their favor or granted their motion for a judgment notwithstanding the verdict. Plaintiff James Hampton, Jr., appeals the district court's denial of attorney fees. We affirm the verdicts and damages against Mathis and Moretz and affirm the denial of attorney fees to Hampton.
 
 
 2
 The evidence, viewed in a light most favorable to Hampton, establishes that at the time of the involved incident, he parked his car with a group of other automobiles on the Virginia side of the Virginia-North Carolina border at a spot known for drag racing. Hampton was parked on the east side of the two-lane road, which ran roughly north-south between Virginia and North Carolina. His car was several feet from the northbound lane (which headed into Virginia) and was pointed toward the road.
 
 
 3
 State Troopers Moretz and Mathis were on duty and located across the border in North Carolina in a marked state police vehicle. No drag racing or other illegal activity was occurring at this time. Mathis and Moretz nonetheless drove into Virginia and parked their car in the middle of the road with emergency lights flashing approximately twenty to twenty-five feet south of Hampton's car. Both Troopers testified that they only intended to record license plate numbers of cars gathered there.
 
 
 4
 The appearance of the North Carolina State Police vehicle caused the cars gathered on the Virginia side to begin dispersing. State Trooper Moretz exited the vehicle and chased a motorcycle which was being pushed toward the North Carolina line. Trooper Mathis got out of the car and approached a motorcycle located in front of Hampton's vehicle. Mathis then walked away from the motorcycle in a semi-circle that brought him back to the driver's side of Hampton's car. Hampton's vehicle was then reentering the road to drive further back into Virginia. Hampton testified that Mathis was not in his line of sight as he drove back onto the road. At this point, the clipboard Mathis was carrying struck Hampton near the eye as Hampton reentered the highway and proceeded back toward Virginia. Mathis was able to record Hampton's license number, but he made no attempt to register a complaint with Virginia or North Carolina authorities at this time.
 
 
 5
 Hampton stopped shortly afterwards to apply an ice compress to his wound. He decided that he needed medical treatment and turned his vehicle around to drive to the nearest hospital, which was in North Carolina. By this time Troopers Mathis and Moretz had returned to North Carolina. When they observed Hampton's car driving past them, they pursued it and pulled Hampton over. Mathis and Moretz approached Hampton's car in an excited manner, and Mathis asked Hampton, "What the hell are you doing?" Mathis accused Hampton of trying to run him down and told him to put his "damn" hands on the steering wheel. Hampton felt incapable of driving further and the officers took him to the hospital, where he received stitches around his eye and pain killers. Hampton returned to the hospital later in the night when his pain increased.
 
 
 6
 Only after discovering Hampton's injury did Mathis and Moretz discuss seeking criminal charges against Hampton in Virginia. After a discussion with a Virginia State Trooper, Mathis and Moretz left the hospital and went to a Virginia magistrate. Mathis and Moretz described their version of events to the magistrate and accused Hampton of malicious assault with an automobile. In a signed complaint, Mathis stated that he and Moretz arrived on the scene of drag racing and that Hampton drove his car toward Mathis. Moretz's name was also on the complaint. At trial, Mathis and Moretz admitted that they knew of no evidence of drag racing that day.
 
 
 7
 Based on the troopers' complaint, the Virginia magistrate issued an arrest warrant for Hampton. He was arrested and fingerprinted in the middle of the night by Virginia authorities. Hampton was tried on a reduced charge of simple assault and was found not guilty. News of his arrest and the charges against him were publicized in the local media.
 
 
 8
 Hampton brought this suit alleging violations of 42 U.S.C. Sec. 1983 involving various constitutional rights and also alleging assorted pendent state claims, including malicious prosecution. The trial court instructed the jury on two of the constitutional claims: on the issue whether Mathis and Moretz violated Hampton's right to freedom of assembly and association, and on Hampton's right to be free of assault and battery from police officers. The court also instructed the jury on the malicious prosecution claim. The jury found in favor of the troopers on the constitutional claims and in Hampton's favor on the malicious prosecution claim. It awarded Hampton $5,000 in compensatory damages, assessed jointly and severally against the troopers, and $2,500 in punitive damages against Mathis and Moretz individually.
 
 
 9
 Mathis and Moretz raise numerous challenges to the trial court's rulings and to the jury's verdict. Moretz first claims that his motion for summary judgment was unopposed and that no sworn testimony was before the court to raise an issue of material fact concerning Moretz's role in the episode. Hampton's sworn deposition was filed with the court at this time, however, and it supplied ample factual assertions to defeat Moretz's motion for summary judgment.
 
 
 10
 Mathis and Moretz challenge the sufficiency of the evidence to sustain various elements of the claim of malicious prosecution. A malicious prosecution action in Virginia requires that:
 
 
 11
 a plaintiff ... allege and prove (1) that the prosecution was set on foot by the defendant and that it terminated in a manner not unfavorable to the plaintiff; (2) that it was instituted, or procured by the cooperation of, the defendant; (3) that it was without probable cause; and (4) that it was malicious.
 
 
 12
 Pallas v. Zaharopoulos, 250 S.E.2d 357, 359 (Va.1979).
 
 
 13
 Mathis and Moretz argue that the issuance of a warrant by the magistrate and the finding by a state judge that probable cause existed for a trial of Hampton on simple assault charges preclude a finding that their actions were without probable cause. We disagree. A malicious prosecution action requires the court to scrutinize the facts which led the magistrate or judge to find probable cause. The "issuance of the warrant does not conclusively prove probable cause because of the very existence of the law permitting malicious prosecution actions...." Niese v. Klos, 222 S.E.2d 798, 801 (Va.1976). The judicial determinations of probable cause relied on the representations of Mathis and Moretz, representations which the jury found lacked credibility.
 
 
 14
 The troopers next contend that the evidence demonstrates they had probable cause for filing a complaint for malicious assault. Under Virginia law, "[t]he test [for the existence of probable cause] is whether the facts and circumstances known, or made known, to the [complainant] are sufficient to justify a prudent and reasonable man in the belief that an accused is guilty of the crime charged." Giant of Virginia, Inc. v. Pigg, 152 S.E.2d 271, 276 (Va.1967). We think a rational jury could have found that the troopers lacked probable cause in pursuing the charges against Hampton.
 
 
 15
 Nor do we accept the troopers' argument that Hampton presented insufficient evidence of malice to sustain a malicious prosecution claim. Under Virginia law,
 
 
 16
 ... "Malice" as used in relation to a cause of action for a malicious criminal prosecution is any controlling motive other than a bona fide desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished, or the lack of a bona fide desire, controlling in its influence, to accomplish those purposes.
 
 
 17
 ....
 
 
 18
 It is not necessary to prove actual spite, hatred, ill will, or grudge against or desire to injure the person charged with the crime. Any controlling motive other than a bona fide desire to suppress crime and bring the guilty to punishment is such a wrongful motive for the institution of a criminal prosecution that it is malicious within the meaning of the term as here used; and a criminal prosecution instituted upon no or such slight grounds of suspicion as to indicate a general disregard of the rights of others directed by chance against the individual is malicious.
 
 
 19
 Freezer v. Miller, 176 S.E. 159, 169-70 (Va.1934) (emphasis in original).
 
 
 20
 Furthermore, although the burden of proof remains with the plaintiff, malice for malicious prosecution may be inferred from the lack of probable cause for the prosecution. Giant of Virginia, 152 S.E.2d at 276. Hampton presented evidence from which the jury could infer that his injury rather than any desire to uphold the law motivated Mathis and Moretz in pressing charges. Instead of pursuing Hampton immediately after the alleged assault or contacting Virginia authorities, the police returned to North Carolina and ran a license check on Hampton's car. After stopping his car in North Carolina, Mathis verbally abused Hampton. Mathis admitted that no discussion of seeking criminal charges against Hampton occurred until after the officers observed his injury.
 
 
 21
 Moretz contends, nevertheless, that there was no evidence showing that the prosecution was "procured by his cooperation;" a required element of malicious prosecution, Pallas, 250 S.E. at 359. Moretz testified, however, that he talked to the Virginia magistrate along with Mathis in the process of formulating the complaint. He accompanied Mathis throughout the affair and they discussed bringing charges against Hampton. That only Mathis' signature was on the complaint does not diminish Moretz' role; the evidence demonstrates that Moretz' cooperation was integral to the prosecution of Hampton.
 
 
 22
 Mathis and Moretz next contend that counsel for Hampton made improper remarks in his closing argument, dwelling upon the North Carolina citizenship of the troopers, referring to Hampton's position as an Army Reserve Drill Sergeant, and asking the jurors to consider the alleged harm to Hampton as having been done to them. Although they did object to the remarks after the jury instructions were given, the troopers' counsel did not move for a mistrial. Whether to grant a mistrial for improper arguments lies in the discretion of the trial court. See Arnold v. Eastern Airlines, Inc., 681 F.2d 186, 211 (4th Cir.1987) (Murnaghan, J., dissenting) (adopted by majority on rehearing en banc, 712 F.2d 899, 906 (1983)), cert. denied, 464 U.S. 1040 (1984). In any event, considering the entire trial developments, we see no prejudicial error flowing from Hampton's closing argument.
 
 
 23
 The jury awarded Hampton $5,000 in compensatory damages on the malicious prosecution claim. Mathis and Moretz concede that once a malicious prosecution claim is established, damages for disgrace, distress, and harm to reputation are presumed without further proof. See Spitzer v. Clatterbuck, 121 S.E.2d 466, 470 (Va.1961). They contend, however, that the trial court instructed the jury that they could include as damages expenses incurred by Hampton in defending the prosecution, even though no evidence of such expenses was presented at trial.
 
 
 24
 We think that "the instructions construed as a whole ... adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir.1987), cert. denied sub nom. City of Fayetteville v. Spell, 108 S.Ct. 752 (1988). Since the jury had no evidence of legal expenses incurred, it seems likely that the damages do not include an award for such expenses.
 
 
 25
 The jury awarded Hampton $2,500 in punitive damages against both Mathis and Moretz. The troopers argue that insufficient evidence existed for the issue of punitive damages to go to the jury. In addition, they contend that the trial judge's instructions to the jury on the standard for punitive damages were so erroneous as to require reversal.
 
 
 26
 To recover punitive damages in a malicious prosecution action, the plaintiff must show "actual malice" by the defendant:
 
 
 27
 In a malicious prosecution action, it is proper to award punitive damages only when actual malice, or malice in fact, has been established by the evidence. Legal malice, which may be inferred from want of probable cause, is not sufficient. Actual malice, or malice in fact, may be established by showing that the prosecutor's action was prompted by ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another.
 
 
 28
 ....
 
 
 29
 ... [W]ilful and conscious misuse of the criminal process constitutes a reckless disregard of the rights of another and is therefore malicious.
 
 
 30
 Lee v. Southland Corp., 244 S.E.2d 756, 759 (Va.1978).
 
 
 31
 We think the evidence was sufficient to create a jury issue on the existence of actual malice. Upon stopping Hampton in North Carolina, Troopers Mathis and Moretz rushed upon his vehicle. Mathis then cursed Hampton and accused Hampton of trying to run him over. After noticing Hampton's injury, the troopers planned the bringing of criminal charges against him. This culminated in a presentation to the Virginia magistrate, part of which the troopers acknowledged was false, and the rest of which the jury found incredible. Although different in detail from its original instructions, the instructions given by the court, upon the jury's request for a repetition of the instructions, were in complete accord with the Virginia law on malicious prosecution.
 
 
 32
 Finally, we find no error in the district court's denial to Hampton of attorneys fees under 42 U.S.C. Sec. 1988. The jury found against Hampton on his section 1983 claim. For us to find the denial of attorneys fees erroneous would require a finding that the district court erred in refusing to direct a verdict in Hampton's favor on this claim. The factual issue in the section 1983 claim, like that involved in the malicious prosecution claim, was for the jury to resolve. The former claim was resolved against Hampton, and his successful malicious prosecution action involved no constitutional issue entitling him to a section 1988 attorneys fees award.
 
 
 33
 The judgment of the district court is, therefore, affirmed.
 
 
 34
 AFFIRMED.