COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judges Malveaux and Callins
Argued by videoconference


RITA MASSIE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0249-24-2            JUDGE DOMINIQUE A. CALLINS
                                                    JULY 1, 2025

ULTA BEAUTY, INC., ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
David M. Barredo, Judge

Jeffrey E. Fogel for appellant.

Stephen T. Fowler (Greenberg Traurig, LLP, on brief), for appellees.


This matter comes before the Court on appeal from the circuit court's final order sustaining

Ulta Beauty, Inc. and Jane Doe's demurrer to Rita Massie's complaint.  Massie's complaint

purported to allege claims of malicious prosecution and defamation against Ulta and Doe.  Massie

argues that the circuit court erred by holding that her complaint failed to plead facts sufficient to

demonstrate that Ulta and Doe acted (1) maliciously and without probable cause on Massie's

malicious prosecution claim, and (2) knowingly or negligently in defaming Massie.  We disagree

with Massie and hold that her complaint is legally insufficient to state a claim for either malicious

prosecution or defamation.  Accordingly, we affirm the judgment of the trial court.

---

* This opinion is not designated for publication.  See Code § 17.1-413(A).

BACKGROUND[1]

Massie is a resident of the City of Charlottesville and "enjoys an excellent reputation in the community." Ulta is a corporation formed in the state of Delaware, with its principal place of business in Illinois; Ulta "owns and operates thirty two stores in the Commonwealth and is authorized to conduct business here." Doe is "an employee and agent of [Ulta] who works at the Ulta Store" at issue in this matter.

In January 2023, Massie was "arrested at her home on a criminal warrant which charged her with both petit and grand larceny at the Ulta Store in Charlottesville." Massie was "led out of her house in handcuffs and in front of her neighbors" and was "not released until a $1,000.00 bond was posted." Massie was arrested after Doe, "and possibly others employed by" Ulta, made a complaint to the police alleging that Massie had "stolen 7 Fragrance tester[] bottles valued at $439.00 and various other fragrances valued at $1,133.00 and requested that warrants be issued for larceny." Thereafter, the police issued warrants for Massie's arrest for petit and grand larceny.

---

[1] "Because this appeal arises from the grant of a demurrer, we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). Despite this, "while we also accept as true unstated inferences to the extent that they are *reasonable . . .* we give them no weight to the extent that they are *unreasonable.*" *Id.* at 358-59. "The difference between the two turns on whether 'the inferences are strained, forced, or contrary to reason,' and thus properly disregarded as 'arbitrary inferences.'" *Id.* at 359 (first quoting *Cnty. of Chesterfield v. Windy Hill, Ltd.*, 263 Va. 197, 200 (2002); and then quoting *Stephens v. White*, 2 Va. (2 Wash.) 203, 211 (1796) (Roane, J.)). We must, further, "distinguish allegations of historical fact from conclusions of law," since we "assume the former to be true *arguendo*, but we assume nothing about the correctness of the latter because 'we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences.'" *Id.* at 359 (quoting *AGCS Marine Ins. v. Arlington Cnty.*, 293 Va. 469, 473 (2017)).

In support of the complaint to the police, Doe relied on a video[2] "which purported to show [Massie] stealing items." Upon further inspection and comparison of the suspect in the video to Massie, however, the police realized that Massie was not the individual in the video, and the charges were dismissed with prejudice. Indeed, as of the time of filing her complaint, Massie had "never been in any Ulta Store." As a result of the foregoing, Massie suffered "injury and harm to her excellent personal reputation as well as great humiliation, shame, exposure to public infamy, and emotional distress from being accused of a crime she did not commit, and being arrested in front of her neighbors." Later, in August 2023, Massie filed a complaint with the Charlottesville City Circuit Court asserting the foregoing facts and alleging causes of action for malicious prosecution and defamation, under a theory of per se liability, against Ulta and Doe (collectively, "Ulta").

Ulta demurred to Massie's complaint. On Massie's malicious prosecution claim, Ulta argued that Massie's complaint failed to set forth facts sufficient to allege that they acted maliciously and without probable cause. As for defamation, Ulta contended that Massie's complaint failed to set forth sufficient facts to allege that they published any statement since their communications to the police were privileged from actionability. Further, Ulta argued that since Massie did not allege "factually what was said to whom or when," her complaint failed to adequately allege an actionable statement. They also argued that Massie's complaint failed to assert facts sufficient to allege their defamatory intent.

Massie opposed Ulta's demurrer. For her malicious prosecution claim, Massie contended that while probable cause may have existed for Ulta and Doe to believe that a theft had occurred,

_____

[2] Massie's complaint does not specifically state that Doe relied on the surveillance video in making the complaint against Massie; that being said, it can be reasonably inferred from the facts of Massie's complaint that Ulta and Doe had access to the surveillance video and used it to investigate and identify Massie as the alleged perpetrator of the larceny at issue.

the complaint set forth facts sufficient to demonstrate they lacked probable cause to believe that *Massie* had perpetrated the theft. Massie contended that because Ulta lacked probable cause in this regard, they acted maliciously as a matter of law. For her defamation claim, Massie first argued that under a theory of defamation per se, she was not required to plead the specific words purported to have been published by Ulta. Next, she argued that regardless of whether Ulta believed their statements were true, the complaint contained facts sufficient to demonstrate that Ulta "lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based." *Lewis v. Kei*, 281 Va. 715, 725 (2011). Finally, Massie conceded that although Ulta's statements to the police may have been privileged, the statements were not privileged as to their publication to other, unidentified employees or patrons of the store who may have heard the statements.

The circuit court heard oral argument on the demurrer and subsequently issued an opinion letter. In its letter, the circuit court found that Massie failed to sufficiently plead her malicious prosecution claim. Specifically, the circuit court concluded that Massie's complaint did "not include any factual allegations that suggest[ed] [Ulta] acted with any controlling motive other than good faith in reporting the incident to police." Further, the circuit court found that, as "the police received enough information to secure the warrants for [Massie's] arrest," "a later finding that [Massie] did not commit the alleged theft is not a sufficient factual basis to suggest that [Ulta] did not have probable cause at the time that they made the statements to the police." Thus, the court held, Massie's complaint failed to state a cause of action for malicious prosecution as a matter of law.

The circuit court likewise held that Massie's defamation claim failed as a matter of law. The court found that Massie failed "to provide sufficient factual allegations suggesting that [Ulta] did not act in good faith and that they did not reasonably believe that [Massie] was the

individual that they observed shoplifting in their store." Moreover, the circuit court found unpersuasive the assertion that the video showed that she was not the perpetrator of the larceny. The court observed that Massie's exoneration and the video's confirmation of Massie's innocence reflected "ex post realizations discovered by the police following their investigation," but that "the[se] facts do not suggest a lack of a reasonable basis or a negligent failure to determine the facts at the time that [Ulta] made the statements to the police." The circuit court concluded:

> Since [Ulta has] an interest in crimes committed within their store, since the complaint does not allege facts suggesting that [Ulta] did not act in good faith, and since the police have a corresponding duty to respond to such violations of the law, the accusations of larceny made to the police by [Ulta] are protected by qualified privilege.

The circuit court further held that any purported publication of the defamatory statements at issue made by Ulta to other employees were protected by the intra-corporate immunity doctrine. As to "*others as well*" to whom the statements may have been made, the court determined that the complaint did not "adequately allege that the defamatory statements were made to any individual who does not have a duty or authority to receive such communications." (Emphasis added). The circuit court also found that Massie's complaint failed to allege the exact words spoken or written, and Massie could not "sufficiently plead a cause of action for defamation" given that the complaint expressly asserted that Massie had never been to an Ulta store and that there were no allegations that Ulta knew Massie.

The circuit court sustained the demurrer and granted Massie leave to amend her complaint within ten days of its related order. Massie did not file an amended complaint but instead brought this appeal.

ANALYSIS

Massie contends that the trial court erred in sustaining Ulta's demurrer to her malicious prosecution and defamation claims. "On appeal, we review a circuit court's judgment sustaining a demurrer de novo." *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 527 (2023) (quoting *Eubank v. Thomas*, 300 Va. 201, 206 (2021)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Peed v. Va. Dep't of Transp.*, 72 Va. App. 686, 692 (2021) (quoting *Reston Hosp. Ctr., LLC v. Remley*, 59 Va. App. 96, 109 (2011)). "We do not evaluate the merits of the allegations, but only whether the factual allegations sufficiently plead a cause of action." *Eubank*, 300 Va. at 206. Our Supreme Court has "stated on several occasions that [it] disapprove[s] the grant of motions which 'short circuit' the legal process thereby depriving a litigant of his day in court and depriving [appellate courts] of an opportunity to review a thoroughly developed record on appeal." *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 95 (1997) (collecting cases). We consider each of Massie's causes of action in turn.

I. Malicious Prosecution

Massie asserts two reasons for her contention that the circuit court erred in sustaining Ulta's demurrer to her malicious prosecution claim. First, Massie argues, her complaint contained facts sufficient to demonstrate that although Ulta "had probable cause to believe that a theft had occurred on their premises . . ., there was no basis to believe that [Massie] was guilty of the crime." In so arguing, Massie emphasizes that the facts pleaded "indicate a lack of *any* cause for [Ulta's] accusation." Second, Massie argues, she was not required to plead malicious intent, since she pleaded facts sufficient to demonstrate that Ulta invoked the machinations of the criminal justice system without probable cause. We disagree with both reasons.

"Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent that [sic] those applied to other tort cases to ensure that criminal prosecutions are brought in appropriate cases without fear of reprisal by civil actions." *Lewis*, 281 Va. at 722-23. "In an action for malicious prosecution, the plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Id.* at 722. The second and fourth of these elements are not at issue in this appeal. Thus, we are left only to consider whether Massie sufficiently pleaded that Ulta's prosecution was brought against her maliciously and without probable cause.

"[M]alice is 'any *controlling* motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.'" *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 111 (2021) (quoting *Hudson v. Lanier*, 255 Va. 330, 333 (1998)). It does not require proof of "actual spite, hatred, ill will, or grudge against or desire to injure the person charged with the crime." *Id.* (quoting *Freezer v. Miller*, 163 Va. 180, 202-07 (1934)). Indeed, malice may exist where a criminal prosecution is "instituted upon no or such slight grounds of suspicion as to indicate a general disregard of the rights of others directed by chance against the individual." *Freezer*, 163 Va. at 207. Malice may be inferred "from a history of animosity between the parties because the determination of malice is based on the parties' entire course of conduct towards each other." *Dill*, 300 Va. at 111. Malice may also be inferred "from a lack of probable cause." *Id.* at 112.

In *Dill*, our Supreme Court found extant malice sufficient to survive a motion to strike where the defendants:

> reported Dill, by name, to the police as the perpetrator of two
> crimes, despite video evidence that the crime was perpetrated by

someone else who bore no physical resemblance to Dill, and who used her own Kroger Plus Card while perpetrating the crimes.

*Id.* at 112. The "Plus Card" used was registered to the culprit of the crime, but neither defendant in *Dill* investigated "their conjecture that Dill was the user of the card and that she was somehow related [to the registrant]." *Id.* Further, the facts of *Dill* demonstrate that the reporting defendant "had previously encountered Dill and had a history of heightened suspicion against Dill." *Id.* In fact, the defendants had been investigating Dill for a number of other reported incidents involving Dill. *Id.* Thus, the Court concluded that although the defendants could have been motivated by a desire to suppress crime, "inferences to the contrary may [have been] drawn from the evidence when viewed in the light most favorable to Dill." *Id.* at 113.

A separate concept from malice, probable cause "is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Eubank*, 300 Va. at 208 (quoting *O'Connor v. Tice*, 281 Va. 1, 9 (2011)). "Whether probable cause existed is determined at the time the defendant took the action initiating the criminal charges." *O'Connor*, 281 Va. at 9. "[I]ssuance of [an arrest] warrant does not conclusively prove probable cause because of the very existence of the law permitting malicious prosecution actions." *Niese v. Klos*, 216 Va. 701, 704 (1976) (discussing *Clinchfield Coal Corp. v. Redd*, 123 Va. 420, 443 (1918)). However, once properly pleaded facts "relating to the question of probable cause are in dispute, the issue is one of fact to be resolved by the trier of fact." *O'Connor*, 281 Va. at 9.

Here, Massie's complaint fails to plead facts sufficient to establish that Ulta acted with malice and without probable cause in reporting the larceny to the police. First, the complaint's allegations do not suffice to establish that Ulta operated without probable cause. The complaint reflects that Doe, on Ulta's behalf, reported that a larceny occurred on the premises of the store after discovering missing stock. Indeed, Massie admits on brief that Ulta "had probable cause to

- 8 -

believe that a theft had occurred on their premises." Her complaint provides no facts to explain why or how Doe would have given Massie's name to the police in reporting the crime, in light of the fact that "Massie ha[d] never been in any Ulta Store." Rather, it appears that Massie asks this Court to infer that Doe divined Massie's name arbitrarily when reporting the crime. But to do so would be for this Court to draw an inference that is "strained, forced, [and] contrary to reason." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 359 (2018) (quoting *Cnty. of Chesterfield v. Windy Hill, Ltd.*, 263 Va. 197, 200 (2002)).

Instead, the complaint lends itself to the inference that Doe reviewed the surveillance footage and had some reason to believe that the name of the individual in the video footage was "Rita Massie."[3] *See supra* note 1. Whether Doe's inferred belief was unreasonable or based on erroneous information is not elucidated in the complaint. And although the issuance of an arrest warrant does not *conclusively* prove probable cause, the fact that the police issued warrants for Massie's arrest suggests that probable cause existed. *See* Code § 19.2-72 ("If upon such examination such officer finds that *there is probable cause* to believe the accused has committed an offense, such officer shall issue a warrant for his arrest." (emphasis added)). In the absence of further facts indicating the contrary, Massie's complaint fails to allege that Ulta lacked probable cause.[4]

---

[3] Notably, the complaint does not address the potential that another individual sharing the name "Rita Massie" might have perpetrated the larceny or that the complainant might have been the victim of identify theft.

[4] Massie's reliance on *Giant of Va., Inc. v. Pigg*, 207 Va. 679 (1967), is misplaced. First, *Pigg* was tried to verdict and is not instructive in a demurrer analysis. 207 Va. at 683. Second, even if it were instructive, Massie's complaint does not suggest that Doe had a prior relationship with Massie, nor does it provide any facts that suggest that Ulta, Doe, or the police were unwilling to consider her "avowals of innocence." *Id.* at 685. Instead, the complaint suggests that immediately upon review of the surveillance video footage in comparison to the then-arrested Massie, Ulta and Doe dropped the charges against her. Ulta and Doe did not "disregard [the] information communicated to [them]," like the defendant's agent in *Pigg*. *Id.* Thus, *Pigg* is inapposite to the facts of the present case.

The complaint merely alleges that Ulta told police that Massie was the perpetrator of the larceny and that she was not in fact the perpetrator as was demonstrated by a comparison "between her and a video" of the larceny "provided by employees of the Ulta store."  The complaint contains no allegations of the grounds of suspicion Ulta had when they identified Massie to the police, let alone that there were no or only "slight" grounds.  *Dill*, 300 Va. at 111 (quoting *Freezer*, 163 Va. at 180).  Indeed, Massie did not allege that Ulta had no reasonable basis for thinking that she was the perpetrator.  To be sure, Massie sufficiently alleged that they were mistaken when they identified Massie to police.  But mere mistake of fact does not demonstrate legal malice, nor does it establish that Ulta lacked a reasonable basis to believe Massie was the perpetrator.  A witness may mistakenly identify a suspect as the perpetrator of a crime while maintaining "a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.'"  *Id.* at 111 (quoting *Hudson*, 255 Va. at 333).

Moreover, Massie's complaint concludes with a summary allegation that Ulta and Doe acted "maliciously."  But "we are not bound to accept conclusory allegations in a review of a demurrer."  *Ogunde v. Prison Health Servs.*, 274 Va. 55, 66 (2007).  Massie's allegation that Ulta acted "maliciously" is unaccompanied by any detailed, factual assertions to support the inference that Ulta in fact acted with malice and is thus merely conclusory.[5]

---

[5] Massie's reliance on *Dill* and *Chipouras v. AJ&L Corp.*, 223 Va. 511 (1982), is misguided.  Here, unlike in *Dill*, Ulta and Doe had no idea what Massie looked like, had no history of interactions with Massie, and had no access to records through which they could verify the identity of the culprit of the larcenies.  *Dill*, 300 Va. at 112.  Without further allegations in the complaint suggesting that Doe intentionally chose to name "Rita Massie" as the culprit either arbitrarily or in the spirit of some animosity, the facts of this case are distinguishable from those in *Dill*.  As for *Chipouras*, neither Ulta nor Doe assert that they acted on the advice of counsel in reporting Massie to the police, and the complaint does not allege as much either.  Thus, *Chipouras* is inapplicable to this case.  223 Va. at 516-18.

Because Massie's complaint fails to allege facts sufficient to establish that Ulta acted maliciously or without probable cause in reporting Massie for the alleged larceny, the circuit court did not err by sustaining their demurrer on that claim.

## II. Defamation

Massie next argues that the circuit court erred in sustaining Ulta's demurrer to her defamation claim. Among other things,[6] Massie argues that for purposes of a claim of defamation per se, defamatory intent is not required; rather, Massie needed to plead only that Ulta published the alleged defamatory statement negligently. For this argument, Massie relies on *Gazette, Inc. v. Harris*, 229 Va. 1 (1985), and *Food Lion, Inc. v. Melton*, 250 Va. 144 (1995). We disagree.

Generally, "[i]n defamation cases, a plaintiff must show: '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Nestler v. Scarabelli*, 77 Va. App. 440, 453 (2023) (quoting *Jordan v. Kollman*, 269 Va. 569, 575 (2005)). "True statements do not support a cause of action for defamation." *Jordan*, 269 Va. at 575. "[S]tatements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action." *Id.* at 576 (quoting *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132 (2003)). "Generally, under our common law, a private individual asserting a claim of defamation first must show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Harless v. Nicely*, 80 Va. App. 678, 688 (2024) (quoting *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46 (2009)).

---

[6] Massie also argues that the trial court erred by concluding that Ulta and Doe's allegations were protected by the intra-corporate immunity doctrine and that she was required to plead to whom the defamatory remarks were made and the exact words of the defamatory statement.

Yet "[i]n the circumstances presented here, involving a plaintiff who is not a public official or public figure, and an alleged defamatory statement that imputes commission of a crime and thus makes substantial danger to reputation apparent, a negligence standard applies." *Melton*, 250 Va. at 150.

> [T]he plaintiff may recover upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.

*Harris*, 229 Va. at 15. "When a plaintiff asserts that the defendant acted negligently, the plaintiff further must prove that the defamatory statement made apparent a substantial danger to the plaintiff's reputation." *Hyland*, 277 Va. at 46.

Here, the circuit court assumed, and the parties do not dispute on appeal, that Massie was required to plead facts sufficient to demonstrate that Doe published the alleged defamatory statement without a "reasonable basis" or that Doe "acted negligently in failing to determine the facts." *Id.* Even assuming Massie's complaint adequately alleges that the purported defamatory statement posed a "substantial danger to [Massie's] reputation," *id.*, the facts as pleaded do not meet this standard. According to Massie's complaint, neither Ulta nor Doe had any prior interactions with her and, therefore, could not have ascertained from the surveillance footage that the culprit of the larceny was not Massie herself. In fact, because the complaint does not allege that either Ulta or Doe knew Massie or had any prior relationship with her—and appears to suggest the opposite—the complaint *cannot* be read as suggesting that they knowingly lodged a false complaint against Massie.

Further, as Doe had no prior relationship with Massie and the complaint provides no clarity as to why or how Doe named "Rita Massie" as the culprit, the complaint also fails to plead facts sufficient to show that Doe reported the crime negligently either. To the contrary, the

- 12 -

complaint suggests that Doe discovered that certain merchandise had been stolen and that she reported the crime to the police along with the belief that the culprit's name was "Rita Massie." The complaint includes no facts that would suggest that Doe failed to exercise due diligence in investigating the matter or that Doe had any reason to believe that Massie specifically was not the culprit. Upon these facts, this Court cannot derive an inference—let alone a reasonable one—that Ulta negligently lodged their accusation against Massie with the police.

As a result, the circuit court did not err by sustaining Ulta's demurrer to Massie's defamation claim.[7]

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*

---

[7] Because we hold, on Massie's defamation claim, that the complaint failed to sufficiently plead that Ulta acted knowingly or negligently, and that holding is sufficient to affirm the trial court's judgment sustaining the demurrer, we need not address Massie's other assignments of error. *See Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015) ("Our jurisprudence requires us to seek 'the best and narrowest ground available' for our decision." (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 576 (2010))).

- 13 -